[Civ. No. 19499. Fourth Dist., Div. Two. Nov. 7, 1978.]

Adoption of CORY LYN MURRAY, a Minor.
WILLIAM MICHAEL OWENS, Plaintiff and Appellant, v.
LAWRENCE C. MURRAY, Defendant and Respondent.

## COUNSEL

John D. Von Der Heide for Plaintiff and Appellant.

John Thomas McCarty, Jr., for Defendant and Respondent.

## OPINION

**KAUFMAN, J.**—By its judgment the trial court denied a petition for a stepparent adoption. William Michael Owens, the proposed adoptive stepparent and the petitioner below, appeals.

The marriage of Carolyn R. Owens and Lawrence C. Murray, the natural parents of the minor, was dissolved in 1976. The judgment of dissolution of marriage awarded custody of the minor, born October 2, 1974, to the mother, granted the father the right to reasonable visitation and ordered him to pay child support. In December 1976 the mother and petitioner William Michael Owens were married. On May 5, 1977, the petition for adoption was filed. The father refused to give his consent to the adoption.

After trial in late August and early September 1977, the court denied the adoption petition finding that, although the father had wilfully failed to support the minor during a one-year period, he had not wilfully failed to communicate with the child for a period of one year.[1]

---

[1] In detailed findings of fact, the court found that the father visited the child almost every day for one month after his separation from the mother; that thereafter the mother moved with the child to Anaheim; and that, notwithstanding the fact that he resided in Las Vegas, Nevada, from about June 1 until December 1976, father visited the child in the Anaheim area "[o]nce in July, 1975, once in August, 1975, once in September, 1975, once on said child's birthday, October 2, 1975, once on December 25, 1975 (Christmas), once in April, 1976, on one occassion [sic] sometime between April, 1976, and October 2, 1976, once on October 2, 1976, [and] once on December 26, 1976." The court also found that the father had not visited the child during 1977. Further the court found that the

■ The sole issue on appeal is whether Civil Code section 224 as amended in 1975 (Stats. 1975, ch. 1244, § 7, p. 3195) permits adoption without the consent of a noncustodial parent upon a showing of either wilful failure to support or to communicate with the child for one year or whether both wilful failure to support and communicate must be shown. We hold, as the trial court concluded, that both must be shown.

As amended in 1975, Civil Code section 224 provides in pertinent part: "A child having a presumed father under subdivision (a) of Section 7004 cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with *and* to pay for the care, support, and education of such child when able to do so, then the parent having custody alone may consent to such adoption, but only after the parent not having custody has been served with a copy of a citation in the manner provided by law for the service of a summons in a civil action that requires him or her to appear at the time and place set for the appearance in court under Section 227; failure of a parent to pay for the care, support and education of such child for such period of one year *or* failure of a parent to communicate with such child for such period of one year is prima facie evidence that such failure was willful and without lawful excuse; . . ."[2] (Italics added.) (All code sections hereafter mentioned will refer to the Civil Code unless otherwise specified.)

Petitioner contends that section 224 imposes upon the noncustodial parent dual duties to communicate with and to support the child and that the parent's failure to perform either duty eliminates the necessity of obtaining that parent's consent to adoption of the child. We have no

mother would not allow the father to take the child out of her residence for visitation and that the father had at least six discussions with the mother regarding the problems he was having with her in exercising his visitation rights.

[2]Prior to the amendment the pertinent portion of the section read: "A legitimate child cannot be adopted without the consent of its parents if living; however, after the custody of any child has, by any judicial decree, been given to the father, and the mother for a period of one year fails to communicate with such child when able to do so, *or* been given to the mother, and the father for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so, then the parent to whom custody has been given alone may consent to such adoption, but only after the parent to whom custody has not been given has been served with a copy of a citation in the manner provided by law for the service of a summons in a civil action that requires him or her to appear at the time and place set for the appearance in court under Section 227; failure of father to pay for the care, support and education of such child for such period of one year or failure of mother to communicate with such child for such period of one year is prima facie evidence that such failure was willful and without lawful excuse; . . ." (Italics added.) (Stats. 1969, ch. 1611, § 2, p. 3376.)

doubt a proper parent should both support and communicate with his or her child, but the plain, clear language of the section is that there must be a wilful failure of the noncustodial parent to do both for a period of one year to eliminate the requirement of his or her consent to adoption of the child. Petitioner asserts that if that had been the legislative intent, the word "both" would have been inserted between the word "fails" and the words "to communicate with." There was no necessity, however, for the Legislature to insert the word "both"; it used the conjunction "and," and there is nothing whatever in the statute or elsewhere so far as we have discovered indicating the Legislature meant the word "and" to be given other than its usual conjunctive meaning.[3] On the contrary, other language in the section, an Assembly bill digest, and the language of a related section, section 232, indicate rather unmistakably that the Legislature used the word "and" advisedly, intending its usual conjunctive meaning.

Petitioner apparently believes that his position finds some support in the subsequent language of section 224 that the "failure of a parent to pay for the care, support and education of such child for such period of one year *or* failure of a parent to communicate with such child for such period of one year is prima facie evidence that such failure was wilful and without lawful excuse; . . ." (Italics added.) Not so. This language does not purport to nor does it alter in any way the earlier language requiring a showing of both wilful nonsupport and failure to communicate; its effect is, as the language plainly indicates, to create a presumption that a failure to perform for one year, either failure to support or failure to communicate, is wilful. To the extent it adds anything, the use of the disjunctive "or" in this part of the section indicates the Legislature was well aware of the differences in meaning usually attributed to the words "and" and "or" and its earlier use of the word "and" was deliberate and meant to be understood in the conjunctive sense.

Without fully articulating his argument, petitioner asserts that the change in section 224 effected by the 1975 amendment was to equalize the treatment of parents—to eliminate the necessity of the noncustodial

---

[3]It is true as petitioner states that in an edition of the Pacific Law Journal devoted to a review of selected 1975 California legislation there is a statement in a discussion of chapter 1244 of the 1975 statutes and particularly Civil Code sections 224 and 7017 that one of the exceptions to the requirement for obtaining a presumed father's consent to an adoption is where "the parent has (1) failed to pay support *or* to communicate with the child for one years [*sic*] . . . ." (7 Pacific L.J. 237, 414; italics added.) We have no way of knowing, of course, whether the statement was made inadvertently or advisedly. In any case, however, no authority is cited for the statement and it is accompanied by no attempt to analyze the statutory language or the legislative history. We conclude the statement was improvidently made.

parent's consent to adoption on the same basis whether the noncustodial parent is the father or the mother. We entirely agree. (See 6 Witkin, Summary of Cal. Law (8th ed., 1978 supp.) Parent and Child, § 193, p. 149.) The principal legislation contained in chapter 1244 of the 1975 Statutes was the enactment of the Uniform Parentage Act (Civ. Code, § 7000 et seq.). (See 6 Witkin, Summary of Cal. Law (8th ed., 1978 supp.) Parent and Child, § 242A, p. 159; 7 Pacific L.J. 411.) Conforming amendments were made in the same chapter to other code sections. "The major purpose of the [legislation] is to provide for substantive legal equality of children regardless of the marital status of their parents. The rights and responsibilities of children in relation to their parents and of parents in relation to their children have been equalized without reference to the marital status of the parents, and each parent has been given equal rights and responsibilities without regard to sex." (7 Pacific L.J. 411.)

Again, however, petitioner's assertion appears more supportive of respondent's position than his own. Prior to the 1975 amendment section 224 provided different bases for eliminating the requirement of obtaining the noncustodial parent's consent to an adoption depending on whether the noncustodial parent was the mother or the father. In the case of a mother the showing required was that she failed to communicate with the child for a period of one year when able to do so; in the case of a father, the showing required was that he wilfully failed to support the child for a period of one year. (See 6 Witkin, Summary of Cal. (8th ed. 1974) Parent and Child, § 193, subds. (c) and (d), pp. 4700-4701; see fn. 2, *ante.*) The 1975 amendment eliminated the differential treatment and made the necessary showing the same for both a noncustodial mother and a noncustodial father by combining the showings previously required for each.

That this is what occurred is made abundantly clear by the bill digest of Senate Bill No. 347, the bill subsequently enacted as chapter 1244, prepared for the Assembly Committee on Judiciary with respect to a hearing on the bill scheduled for August 14, 1975. On page 5 under the heading "ADOPTIONS" it stated: "Under existing law, if a father has custody of a child he can place the child for adoption without the consent of the mother if she has not, for a period of one year, communicated with the child when she was able to do so. If a mother has custody she can place the child for adoption without the consent of the father if he has, for a period of one year, willfully failed to pay for the care, support or education of the child. Under this bill, when a child has a presumed

father, either parent having sole custody of the child can place him for adoption if the other parent has, for a period of one year, willfully failed to communicate with *and* pay for the care, support or education of the child. (Section 224)" (Italics in original.)

Although we deem the foregoing conclusive, it is also appropriate to note the language of Civil Code section 232 governing proceedings to have a minor declared free from parental control and custody. One situation in which such a proceeding is appropriate is when a child has been left "by one parent in the care and custody of the other parent for a period of one year without any provision for his support, *or* without communication from such parent . . . with the intent on the part of such parent . . . to abandon such [child]." (Italics added.) (Stats. 1977, ch. 1252, § 75; Stats. 1976, ch. 940, § 2 [the quoted language is the same in the text operative until and after July 1, 1978].) It is apparent the Legislature has used the word "or" when the disjunctive was intended. Presumably, the showing in the disjunctive is sufficient under section 232 because of its additional requirement that the noncustodial parent's conduct be shown to be accompanied by an intent to abandon the child.

Petitioner's assertion that the trial court failed to consider the best interests of the child is devoid of merit. The trial court expressly stated its belief that the proposed adoption would be in the best interest of the child but that the necessity of obtaining the noncustodial parent's consent could only be eliminated in accordance with the statute. The court was eminently correct.

It is true as petitioner points out that the requirement of consent by a natural parent is not to be strictly construed in favor of the rights of a natural parent but, rather, liberally construed to effectuate the objectives of the adoption statute in promoting the welfare of children. (See *Adoption of Duckett,* 48 Cal.App.3d 244, 248 [121 Cal.Rptr. 574].) However, the principle stated has no application in the case at bench. The only permissible construction was in accordance with the plain language of the statute.

The judgment is affirmed.

Tamura, Acting P. J., and McDaniel, J., concurred.