[Civ. No. 22063. Third Dist. Dec. 28, 1983.]

In re JAY R., a Minor.
GREGORY F., Petitioner and Respondent, v.
WILLIAM R., Objector and Appellant.

/

COUNSEL

Joan G. Poulos, under appointment by the Court of Appeal, for Objector and Appellant.

Brown & Hill and Thomas L. Hill for Petitioner and Respondent.

OPINION

CARR, J.—Appellant William R. (William) appeals from a judgment decreeing adoption of his minor son, Jay R., by Gregory F. (petitioner), the boy's stepfather, and from an order of abandonment declaring Jay free from his care and custody.

On March 22, 1982, petitioner filed a petition for the adoption of Jay, alleging that he and Barbara F., Jay's mother, were married November 29, 1980; that she was formerly married to William, Jay's natural father, that such marriage was dissolved by a final decree of dissolution entered November 20, 1979, which decree granted to the mother custody of Jay. Pe-

titioner further alleged he desires to adopt Jay and Jay's mother is prepared to consent to the adoption, that the consent of William is unnecessary in that for a period in excess of one year prior to filing the petition, he wilfully failed to communicate with and to pay for the care, support, and education of Jay, having the ability to do so; and that William has been incarcerated in a federal prison since approximately June 15, 1981.

The Placer County Welfare Department, adoption division, investigated the case and filed a report recommending the petition be granted and consenting to the adoption, provided the court found the child was legally free for adoption under Civil Code section 224.

On June 2, 1982, William was served a citation at the United States Medical Center for Federal Prisoners in Springfield, Missouri, ordering him to appear at the Placer County Superior Court on July 6, 1982, and show cause why the adoption petition should not be granted. He was not served with a copy of the petition. William sent a letter to the Superior Court of Placer County stating he could not be present at the hearing but did not consent to the adoption. He also requested the proceedings be continued until his scheduled parole on August 10, 1983. A federal public defender sent a letter to the same effect on behalf of William, although he did not represent William in this case. The record does not reflect that the court responded to William's request.

The petition for adoption was heard July 6, 1982. Neither William nor counsel on his behalf appeared. Petitioner testified that from the day he married Jay's mother, William has not communicated with or paid child support for Jay. Jay's mother testified the final decree of divorce from William granted him reasonable visitation rights and ordered him to pay child support when able to do so; that for a period of more than one year prior to William's incarceration he did not pay any child support. He did visit Jay "once in a while" prior to his incarceration, but since that time has not communicated with Jay.[1]

The court entered a decree of adoption finding all the allegations of the petition to be true, and ordering the adoption of Jay by petitioner. Two days later, the court filed an order of abandonment, finding William wilfully failed to communicate with and provide for Jay for a period in excess of one year, although able to do so, and by such action evidenced his intent to abandon Jay. (Civ. Code, § 232, subdivision (a)(1).) The court declared Jay

---

[1]The critical dates, as testified by Jay's mother, were November 20, 1979, the date of entry of the final decree of dissolution from William; March 1981, the date William was sent to prison; January or February 1981, when William last had contact with Jay, and the period between March 1981 and July 6, 1982, (the date of the adoption hearing) during which William did not communicate with Jay.

free from the custody and control of William. William timely filed a notice of appeal from the court's judgment.[2] For reasons set forth herein we reverse.

## I

We turn first to the order of abandonment. This order was made pursuant to Civil Code section 232, subdivision (a)(1),[3] which provides in relevant part that an action may be brought to have a minor "declared free from the custody and control of either or both of his parents" if the child "has been left . . . by one parent in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent . . . with the intent on the part of the parent . . . to abandon the child  The failure . . . to provide, or failure to communicate shall be presumptive evidence of the intent to abandon." Section 233 provides that "[a]ny interested person" may petition the superior court to have a child declared free from the custody and care of either or both parents.

The obvious flaw in the court's order of abandonment is that *no petition pursuant to section 232 was ever filed.* The adoption petition was filed pursuant to Civil Code section 224, which provides: "A child having a presumed father . . . cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, . . . and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so, then the parent having custody alone may consent to the adoption, . . ."[4] Petitioner did not allege that William abandoned or intended to abandon his son under the terms of section 232, nor did he pray for an order declaring Jay free from the custody and care of William. He alleged only that William's consent to the adoption was not necessary for the reasons stated and did not purport to file for an abandonment order under section 232.

---

[2]William's notice of appeal was in the form of a letter to the Placer County Superior Court stating his intention "to appeal the judgment that was made." William did not receive a copy of either the decree of adoption or the order of abandonment and thus was not aware of the precise nature of the "judgment" in this case. Nonetheless, the superior court construed the letter an appeal from both the decree of adoption and the order of abandonment. We also treat the appeal as such.

[3]Except as otherwise indicated, all statutory references are to the Civil Code.

[4]That the petition was filed pursuant to section 224 is clear from its language, which reads: "The *consent* of [William] is unnecessary in that for a period in excess of one (1) year prior to the filing of the herein Petition, [William] has *willfully* failed to communicate with and to pay for the care, support, and education of this minor, [JAY], *having been able to do so.*" (Italics added.)

The court apparently believed the abandonment order was prerequisite to granting the adoption decree. This is not correct. ■ The actions which may cause a parent to lose his or her right to withhold consent to the adoption may be "tantamount to abandonment," but "abandonment" within the meaning of section 232 is *not* an issue in a stepparent adoption pursuant to section 224. (*Adoption of Thevenin* (1961) 189 Cal.App.2d 245, 250 [11 Cal.Rptr. 219]; *Adoption of McLaughlin* (1957) 155 Cal.App.2d 22, 24-25 [317 P.2d 61].) In such proceedings the sole issue, other than the child's best interests, is whether the noncustodial parent had the ability to communicate with and provide for the child, but wilfully failed to do so. (*Adoption of Smith* (1969) 270 Cal.App.2d 605, 608-609 [75 Cal.Rptr. 900]; *Adoption of McLaughlin, supra,* 155 Cal.App.2d at p. 24.) In contrast, the essential element in an abandonment proceeding is whether the parent failed to communicate with or provide for the child *with the intent to abandon the child.* (*In re Conrich* (1963) 221 Cal.App.2d 662, 666 [34 Cal.Rptr. 658].)

■ Moreover, under section 224, petitioner must show William failed to provide for *and* communicate with the child for a period of one year (*Adoption of Murray* (1978) 86 Cal.App.3d 222, 225 [150 Cal.Rptr. 58]), whereas a petitioner under section 232 need show only that the parent *either* failed to support *or* failed to communicate for one year, with the intent to abandon the child. (*Id.,* at p. 227.) Under section 224, a section 232 abandonment order provides a completely *separate ground* for granting an adoption without a parent's consent. It was neither necessary nor proper considering the state of the pleadings for the court to issue an order of abandonment in this case.

Assuming such order had been appropriate, the court failed to follow the procedures required for a section 232 proceeding. Section 233 requires the preparation of a county report which includes, inter alia, a statement of the child's feelings and thoughts concerning the pending action and a statement of the child's attitude toward his or her parent or parents and whether or not he or she would prefer living with his or her parent or parents. The report prepared in this case contains none of this information and does not purport to be a section 233 report, but is rather one prepared pursuant to section 227a. Section 235, subdivision (a), requires that notice be given to the natural parent, and that such notice advises him or her of the rights and procedures under section 237.5, which include the right to have counsel appointed if he cannot afford counsel. William was given only a bare notice to appear in court on a certain date. He was not informed of his right to counsel or of the factual allegations against him. On procedural grounds alone, the order of abandonment is invalid. (*In re Rodriguez* (1973) 34 Cal.App.3d 510 [110 Cal.Rptr. 56].)

## II

We next consider the decree of adoption. William contends he was denied due process under the federal and California Constitutions because of inadequate notice and the failure of the court to appoint counsel to represent him.

### A. *Notice*

Section 224 provides the noncustodial parent may not be deprived of his right to withhold consent to an adoption unless he has been served with a citation requiring him to appear at the adoption hearing. There is no dispute William was served with such a citation. However, due process does not begin and end with the receipt of such a citation. ■ The right of a parent to the companionship, care, custody, and management of his children is "compelling," ranked among the most fundamental civil rights of man. (*In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]; *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558-559, 92 S.Ct. 1208].) It is an interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." (*Stanley* v. *Illinois, supra,* 405 U.S. at p. 651 [31 L.Ed.2d at p. 558].) The total severance of the parent-child relationship amounts to the taking of a "liberty" under the due process clause of the United States Constitution. (*In re Susan M.* (1975) 53 Cal.App.3d 300, 310 [125 Cal.Rptr. 707].) Before this may be done, the parent must be afforded *adequate* notice and an opportunity to be heard. (*In re B. G., supra,* 11 Cal.3d at pp. 688-689.)

■ We have held in child dependency cases under Welfare and Institutions Code, section 300, that it is "fundamental to due process" to provide notice to parents of the specific facts and allegations upon which deprivation of custody is predicated. (*In re Jeremy C.* (1980) 109 Cal.App.3d 384, 397 [167 Cal.Rptr. 283].) Such notice is necessary to enable the parents to properly meet the charges against them. (*Ibid.*) In juvenile court proceedings, where the "parents' right to . . . custody [is] at stake," due process demands that the youth and his parents be given notice "of the specific issues that they must meet." (*In re Gault* (1967) 387 U.S. 1, 33-34 [18 L.Ed.2d 527, 550, 87 S.Ct. 1428].)

If fundamental due process requires notice of specific allegations in a dependency proceeding, it *must* require such notice in an adoption proceeding, where the potential effect on the parent-child relationship is much more devastating. A dependency case may result only in temporary loss of child custody; a decree of adoption results in the complete and final termination of the parent-child relationship, relieving the natural parent of all parental

rights and responsibilities with regard to the adopted child. (Civ. Code, § 229; *Estate of Jobson* (1912) 164 Cal. 312, 316-317 [128 P. 938].)[5]

We determine that in a stepparent adoption proceeding under section 224, in which petitioner alleges the noncustodial parent's consent is not necessary because of his or her wilful failure to communicate with and provide for the child for a period of one year, the noncustodial parent must be informed of the specific factual allegations supporting the petition. A simple and nonburdensome manner of accomplishing this is to attach a copy of the petition to the citation notice.

William was given no notice of the allegations against him. In his response to the citation, he stated he did not consent to the adoption, unaware of the specific issues he had to meet. The need to advise a parent of these allegations is clearly demonstrated in this case. William was incarcerated in a prison halfway across the country from California. A citation simply ordering him to appear in a California court in one month without any recitation of the issues he must meet cannot be considered adequate notice. We find the notice given William does not meet the requirements of due process.

B. *Right to Counsel*

Consideration of the same fundamental liberty at risk in this case compels us to conclude that due process requires appointment of counsel for indigent noncustodial parents accused of neglect in stepparent adoption proceedings, if indigency is demonstrated and appointment of counsel is requested.[6]

Our courts have consistently held that indigent parents are entitled to the appointment of counsel when their right to custody and care of their children is at issue. (See *In re Simeth* (1974) 40 Cal.App.3d 982 [115 Cal.Rptr. 617] (counsel appointed for indigent parent on appeal from dependency proceeding under Welf. & Inst. Code, § 600 (now § 300)); *In re Jacqueline H.* (1978) 21 Cal.3d 170, 175-176 [145 Cal.Rptr. 548, 577 P.2d 683] (counsel appointed on appeal from § 232 abandonment proceeding); *In re Rodriguez, supra,* 34 Cal.App.3d, at pp. 514-515 (counsel appointed for indigent par-

---

[5]This proceeding actually works a double deprivation. First, the parent is stripped of his right to withhold consent to the adoption; then his relationship with his child is terminated against his will.

[6]Though the record herein is sparse as to evidence of appellant William's indigency, respondent has not raised this issue and in his final letter to Placer County, after the adoption decree had been entered, William did request appointment of counsel on the ground he could not afford counsel "at this time." He apparently erroneously believed an adoption could not go forward without his consent.

ent at trial level in § 232 proceeding).) Although these cases found explicit or implicit statutory authority for the appointment of counsel, *Rodriguez* held that even in the absence of a statutory right, due process requires the appointment of counsel where the parental relationship is at stake. (34 Cal.App.3d at pp. 514-515.) Our Supreme Court has held that an indigent defendant in an action to establish paternity, which involves the same compelling interest as an action to *terminate* paternity, is constitutionally entitled to appointed counsel. (*Salas* v. *Cortez* (1979) 24 Cal.3d 22, 27-34 [154 Cal.Rptr. 529, 593 P.2d 226].) Other jurisdictions have held that indigent parents are entitled to appointed counsel in custody or termination proceedings on state and federal constitutional grounds alone.[7]

In its most recent decision on this issue, the United States Supreme Court held that under the Fourteenth Amendment, indigent parents may be entitled to appointed counsel in parental termination proceedings. (*Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18 [68 L.Ed.2d 640, 101 S.Ct. 2153].) The trial court must evaluate and balance three elements in determining due process requirements: "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." (*Id.,* at p. 27 [68 L.Ed.2d at p. 649].) After such evaluation, the court still must "set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." (*Ibid.*) The court opined the presumption against appointed counsel may be overcome when "the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, . . ." (*Id.,* at p. 31 [68 L.Ed.2d at p. 652].) The determination is to be made on a case-by-case basis. In *Lassiter, supra,* the court concluded the indigent parent did not have a constitutional right to appointed counsel.

The California Supreme Court has considered similar factors in making due process determinations where parental rights are concerned,[8] but does not weigh these factors against a "presumption" that appointed counsel is required only if a person's physical liberty is at stake. In *Salas, supra,* the court specifically rejected, as a matter of California law, the contention that appointed counsel is required only when imprisonment is imposed. (*Id.,* at

---

[7]See *Danforth* v. *State Dept. of Health & Welfare* (Me. 1973) 303 A.2d 794; *In Interest of Friesz* (1973) 190 Neb. 347 [208 N.W.2d 259]; *Crist* v. *New Jersey Div. of Youth & Family Services* (1975) 135 N. J. Super. 573 [343 A.2d 815]; *In re B.* (1972) 30 N.Y.2d 352 [334 N.Y.S.2d 133, 285 N.E.2d 288]; *State* v. *Jamison* (1968) 251 Ore. 114 [444 P.2d 15]; *In re Adoption of R. I.* (1973) 455 Pa. 29 [312 A.2d 601, 80 A.L.R.3d 1134]; *In re Welfare of Luscier* (1974) 84 Wn.2d 135 [524 P.2d 906]; *State* ex. rel. *Lemaster* v. *Oakley* (1974) 157 W.Va. 590 [203 S.E.2d 140].)

[8]See *Salas* v. *Cortez, supra,* 24 Cal.3d at page 27.

p. 27, fn. 2.)[9] California precedents do not give rise to such a presumption under the California Constitution and, indeed, hold just the opposite. (See *Mills* v. *Municipal Court* (1973) 10 Cal.3d 288, 301 [110 Cal.Rptr. 329, 515 P.2d 273].) We therefore evaluate the present case under the California Constitution, article I, section 7, and do not presume that appointed counsel is required only where physical liberty is at stake.

■ "The touchstone of due process is fundamental fairness. Whether due process requires the appointment of counsel in a particular case depends on the interests involved and the nature of the proceedings." (*Salas* v. *Cortez, supra,* 24 Cal.3d at p. 27.) In making this determination, we "must examine the nature and magnitude of the interests involved, the possible consequences appellants face and the features which distinguish [this proceeding] from other civil proceedings. These factors must then be balanced against the state's interests." (*Ibid.*)

This proceeding could lead to the complete and permanent termination of one of the most compelling and fundamental rights of our citizens, that of a parent. (Pp. 259-260, *ante.*) We therefore consider the nature of these proceedings and the state's interest in denying counsel.

We examine the nature of the proceedings to determine whether counsel is necessary to obviate the risk of erroneous and unfair results. (See *Salas* v. *Cortez, supra,* 24 Cal.3d at p. 31; *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pp. 28-29 [68 L.Ed.2d at pp. 650-651].) A stepparent adoption differs from other parental termination cases in that it is not an action brought by the state and argued by state attorneys. But neither is the adoption proceeding a purely private dispute. The state is called upon to exercise its exclusive authority to terminate the legal relationship of parent and child and establish a new relationship, in accordance with an extensive statutory scheme. (§§ 221-230.6.) The county welfare department must investigate and prepare a report and recommendation on each stepparent adoption and file the report with the court. The court may not order an adoption unless it considers this report and recommendation. (§ 227a.) If the consent of a parent is not required, the county adoption agency or State Department of Social Services must consent to the adoption as it did in this case. (§ 226.3) The court must decide where the child's best interests lie.

---

[9]The dissent relied on *Scott* v. *Illinois* (1979) 440 U.S. 367 [59 L.Ed.2d 383, 99 S.Ct. 1158], for this contention. (*Salas* v. *Cortez, supra,* 24 Cal.3d at p. 35 (dis. opn. by Richardson, J.).) The United States Supreme Court in *Lassiter, supra,* also relied to a large extent on *Scott* in holding its precedents create a presumption that appointed counsel is only required where physical liberty is at stake. (*Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pp. 26-27 [68 L.Ed.2d 640 at p. 649].) Our Supreme Court stated that *Scott* is not the law in California. (*Salas* v. *Cortez, supra,* 24 Cal.3d at p. 27, fn. 2.)

(§ 227.) ■ Although an adoption proceeding is not generally adversarial, when petitioner alleges facts that would strip a parent of his right to withhold consent, that parent is entitled to contest those allegations. (§ 224; *Adoption of Burton* (1956) 147 Cal.App.2d 125, 134 [305 P.2d 185].) Moreover, a nonconsenting parent is entitled to be heard on the issue of the best interests of the child (*Adoption of Thevenin, supra,* 189 Cal.App.2d at p. 250), and must be given an opportunity to controvert the contents of any reports submitted. (*In re David B.* (1979) 91 Cal.App.3d 184, 199 [154 Cal.Rptr. 63].) If the appropriate agency approves the adoption, its expertise and resources are marshalled on the side of the petitioner, and an indigent parent who seeks to be heard will have to face and attempt to overcome such recommendation. If witnesses are examined to determine the best interests of the child, counsel may be necessary for effective cross-examination.

A parent who contests allegations of wilful neglect may have to sustain a heavy burden of proof. The petitioner need show only that the noncustodial parent failed to provide for and communicate with the child for a year to establish a prima facie case of wilful neglect without lawful excuse. (§ 224.) The burden then shifts to the parent to prove he did not wilfully fail to provide for or communicate with the child, or was unable to do so. (4 Markey, Cal. Family Law Practice and Procedure (1983) § 72.42[1], p. 72-37.) Legal concepts of "wilfulness" and "lawful excuse," though perhaps simple to the attorney, may not be simple to an indigent parent with a ninth grade education. Nor may an indigent be aware that the "year" in question is not limited to the year immediately preceding the filing of the petition (*Adoption of Burton, supra,* 147 Cal.App.2d 125, 136), or what factors, such as imprisonment, may obviate a finding of wilful neglect. (*Adoption of Coffee* (1976) 59 Cal.App.3d 593, 599 [130 Cal.Rptr. 887].) An uneducated indigent can easily become overwhelmed by such a proceeding without the assistance of counsel. (See *Lassiter* v. *Department of Social Services, supra,* 452 U.S. at pp. 29-30 [68 L.Ed.2d at p. 651].)

The need for counsel under these circumstances is exemplified by this case. William, unable to attend the hearing, unrepresented by counsel, and unaware of the allegations against him, could not challenge the adoption agency report or cross-examine witnesses. The evidence of his failure to provide for and communicate with his child came exclusively from the testimony of petitioner and the mother. The only evidence of William's ability to support his son prior to his imprisonment was the mother's unsupported statement that William worked "off and on." She also testified William had remarried, moved to another city, and supported three other sons, factors

that might negate a finding of ability to communicate or pay support. (*Adoption of Smith, supra,* 270 Cal.App.2d at p. 609.) Without counsel, these points were never pursued.

At the close of the hearing, the court directed counsel for petitioners to prepare an order of abandonment under section 232. Though counsel perhaps should have known such an order was inappropriate in this proceeding, and even if proper, that William had been denied his statutory right to notice of his entitlement to appointed counsel (§§ 235, subd. (a); 237.5, subd. (b)), such counsel would indeed be courageous to countermand the court's order and advise a procedural morass was being created.

The compelling need for counsel in section 232 proceedings is well defined in case and statutory law. (*In re Jacqueline H., supra,* 21 Cal.3d 170; *In re Rodriguez, supra,* 34 Cal.App.3d 510.) The need for counsel in a 224 proceeding in which petitioner seeks to strip a parent of his right to withhold consent is no less compelling. Each serves the purpose of providing an adoptive home for a child (§ 232.6), and each has the identical effect—the complete termination of the parent-child relationship against a parent's will. (§§ 229; 232.6.)

Though recognizing the compelling nature of the interest involved and the need for counsel to assure a fair and accurate hearing, we must weigh these factors against the state's interest in denying counsel to indigent parents.

The state's interest is largely financial. Though this is a legitimate interest, "it is hardly significant enough to overcome private interests as important as those here, . . ." (*Lassiter* v. *Department of Social Services, supra,* 452 U.S. at p. 28 [68 L.Ed.2d at p. 650].) Moreover, the state may recoup the cost of appointed counsel if it is determined at the end of the proceedings that the parent has sufficient means. (Gov. Code, § 27712; *Salas* v. *Cortez, supra,* 24 Cal.3d at p. 33.) Petitioner contends that appointment of counsel would frustrate the purpose of the adoption laws in permitting a nonconsenting parent to endlessly delay the proceedings by placing him or herself beyond the assistance of the court. William did not "place himself beyond" court assistance; he was sent to prison, the location of which petitioner was well aware. The court established jurisdiction over him by serving him with a citation. The appointment of counsel need not delay the proceedings. The state has no legitimate interest in terminating a parent's relationship with his child if he has not wilfully neglected or abandoned that child. Appointment of counsel will make the factfinding process more accurate, thereby

*furthering* the state's interest in terminating the rights of parents who do in fact neglect or abandon their children. (See *Salas* v. *Cortez, supra,* 24 Cal.3d at p. 33.)

■ We give cognizance to the principle that the adoption statutes must be liberally construed in favor of the welfare of the child (*San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 16 [101 Cal.Rptr. 541, 496 P.2d 453]; *Adoption of Duckett* (1975) 48 Cal.App.3d 244, 248 [121 Cal.Rptr. 574]), and it may well be that this adoption is in the best interests of the child. But this does not mean that courts may adopt procedures which effectively deny a natural parent's right to be heard. William had no notice of the allegations against him. There was no apparent response to his request for a continuance. The court was aware of William's status and his inability to attend, yet made no inquiry about the representation of his interests. Following the entry of the adoption decree and order of abandonment William was apparently *still* unaware of the reason for granting the adoption without his consent. William's compelling and fundamental interest in his child's welfare was completely ignored. Such a proceeding can hardly be characterized as "fundamentally fair."

■ Accordingly, we hold when the petitioner in a stepparent adoption alleges a natural parent's consent is unnecessary because of his or her wilful failure to communicate with and provide for his or her child for over a year when able to do so, the parent is entitled to notice that counsel will be appointed upon request if the parent is unable to afford counsel, and such counsel must be appointed upon proof of indigency, absent a knowing and intelligent waiver.

### III

Our decision makes it unnecessary to address appellant's claim regarding the merits of the court's orders. ■ However, for the guidance of the trial court, we hold that, as in section 232 proceedings, the standard to be used by the trial court in determining facts relating to a parent's wilful neglect of his child in a section 224 adoption proceeding is proof by clear and convincing evidence. (See *In re Heidi T.* (1978) 87 Cal.App.3d 864, 870-871 [151 Cal.Rptr. 263]; *In re Cynthia K.* (1977) 75 Cal.App.3d 81, 85-86 [141 Cal.Rptr. 875].)

The judgment is reversed and remanded to the trial court with directions to appoint counsel for appellant William if he so requests and if he demonstrates a present indigency.

Sparks, J., concurred.

Puglia, P. J., concurred in the result.