[No. A027539. First Dist., Div. Three. June 11, 1985.]

HOWARD M. GILBERT, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY et al.,
Respondents;
COUNTY OF ALAMEDA, Real Party in Interest.

---

COUNSEL

Irwin J. Eskanos and Eskanos & Fertig for Petitioner.

Ephraim Margolin as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Richard J. Moore, County Counsel, and Kelvin H. Booty, Jr., Assistant County Counsel for Real Party in Interest.

---

OPINION

SCOTT, J.—This petition, filed by a criminal defense attorney, challenges the trial court's reduction of his compensation as appointed counsel. He was

originally appointed at $75 per hour and $750 per day of trial, but after trial the court reduced his total compensation from approximately $78,000 to under $40,000. The final compensation was based upon a county bar association fee schedule for its criminal defense panel, rather than upon the original fees set by the court. We conclude that the court erred in reducing petitioner's fees after he had performed his services.

John Robert Tapia, petitioner's client, was charged by information filed May 6, 1981, with two counts of murder in the first degree and with four special circumstances. Jules F. Bonjour, Jr., was retained as his attorney. On February 8, 1982, the California Supreme Court filed its original version of *Keenan* v. *Superior Court* (1982) 30 Cal.3d 750, modified May 6, 1982, 31 Cal.3d 424 [180 Cal.Rptr. 489, 640 P.2d 108], finding an abuse of discretion in a trial court's failure to appoint second counsel for a death penalty defendant.

Thereafter, Mr. Bonjour made an application for second counsel for Mr. Tapia. Mr. Tapia submitted a declaration that he could not afford to hire a second attorney because he had exhausted his funds by hiring Mr. Bonjour. At an *in camera* hearing held June 3, 1982, the court ordered that petitioner be designated as cocounsel for Mr. Tapia and ordered that petitioner's compensation "shall be at the rate of $75.00 per hour and $750 per day for trial."

Mr. Bonjour informed petitioner of the appointment, and petitioner began work on the case. Upon learning of a modification to the *Keenan* opinion to provide that the appointment would be pursuant to Penal Code section 987, subdivision (b),[1] rather than section 987.9, Mr. Bonjour petitioned for a change in the appointment order. On February 10, 1983, the court issued a new order citing sections 987, subdivision (b), and 987.3, and restating the rate of compensation as "$75.00 per hour plus $750.00 per day for trial."

Petitioner's first payment request covered the period from June 1, 1982, through August 22, 1982. According to petitioner (and for reasons not made clear by the parties), this first bill of $4,583.31 was paid by Mr. Bonjour "[p]ursuant to Judge Kawaichi's original order of June 3, 1982, . . ." Thereafter, Judge Kawaichi signed the following orders for petitioner's compensation: February 10, 1983—$3,322.50; March 7, 1983—$11,790; April 4, 1983—$15,870; May 3, 1983—$20,340; June 2, 1983—$20,662.50; June 16, 1983—$1,500.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

The county paid the compensation ordered February 10 and March 7, but refused to pay the other sums totaling $58,372.50. On July 11, 1983, over a month after the trial ended, Judge Kawaichi issued an order to show cause against the county treasurer. However, he then issued an ex parte order vacating for review his orders setting the rate for compensation and his payment orders of March 7, 1983, April 4, 1983, May 3, 1983, June 2, 1983, and June 16, 1983. He subsequently vacated the order to show cause against the treasurer.

After further oral and written proceedings, Judge Kawaichi signed a new order fixing the total fees after February 10, 1983, at $31,258.31, plus interest on a portion of that amount from June 16, 1983. This petition followed.

Section 1095 authorizes two counsel on each side to "argue the cause" in a death penalty case. In *People* v. *Jackson* (1980) 28 Cal.3d 264, 285-286 [168 Cal.Rptr. 603, 618 P.2d 149], the court ruled that that section did not "purport to authorize or mandate the *appointment* of additional counsel at public expense, but only to permit the *argument* of the case by two counsel." *Jackson* left open the possibility that equal protection principles would compel appointment of additional counsel if the facts or legal issues were so complex as to warrant it. (*Id.*, at pp. 287-288.) The *Jackson* court suggested section 987.9 as authority for payment of such additional counsel. (*Ibid.*)

In the first *Keenan* opinion (*Keenan* v. *Superior Court, supra,* 30 Cal.3d 750), the court found an abuse of discretion in failing to appoint additional counsel under section 987.9, which provided at the time: "In the trial of a capital case the indigent defendant, through his counsel, may request the court for funds for the specific payment of investigators, experts, and others for the preparation or presentation of the defense. . . ." The section provided for an *in camera* hearing by a judge other than the trial judge presiding over the case.

Before the first *Keenan* opinion became final, it was modified to rest authority for the appointment upon section 987, subdivision (b), but to require the same confidentiality provided in section 987.9. Section 987, subdivision (b), is the general authority for appointment of counsel in a capital case: "[i]n a capital case, . . . [i]f the defendant is unable to employ counsel, the court shall assign counsel to defend him. . . ." (*Keenan* v. *Superior Court* (1982) 31 Cal.3d 424 [180 Cal.Rptr. 489, 640 P.2d 108].)

### (1) *Did Judge Kawaichi have jurisdiction to set fees for petitioner's appointment as second counsel in a death penalty case?*

The county justifies the challenged fee reduction order by contending that Judge Kawaichi had no jurisdiction to enter the original order appointing petitioner and setting his compensation. The argument against jurisdiction has several strands which do not tie together well. In one place, the county argues that only the trial judge, not a law and motion or calendar judge, may appoint counsel. In another, the county contends that Judge Kawaichi lacked jurisdiction because at the time his initial appointment order was filed, *Keenan* no longer rested upon section 987.9, the section cited to the court in the moving papers. In various places, the county intertwines the jurisdiction argument with an argument that the appointment order was an abuse of discretion for various reasons.

It is a general principle of law that an order made in the absence of jurisdiction is a void order and may be set aside at any time. Thus, even petitioner's estoppel argument might be overcome by a finding that Judge Kawaichi lacked jurisdiction to issue the order appointing petitioner and setting his compensation rate. However, none of the county's arguments is sound.

The county does not identify the source of its assumption that only the "trial" judge may appoint counsel and order compensation. Evidently, the theory is that because section 987.9 *excludes* the trial judge from considering the application, the other appointment sections *require* the trial judge to make the orders.

Such a reading is at odds with the wording of section 987, subdivision (b), and would lead to absurd results. Section 987, subdivision (b), contemplates appointment of counsel at the arraignment and representation by that counsel at all stages of the preliminary and trial proceedings. A requirement that the trial judge make the appointment would either deprive the defendant of second counsel throughout pretrial proceedings or compel the county to designate the "trial" judge at the time of arraignment.[2]

The county's argument about the effect of the *Keenan* modification is equally confusing and meritless. When Mr. Bonjour sought additional counsel, *Keenan* was not a final decision, but the original version had been

---

[2]At some point, the trial judge, Judge Haugner, did hold a hearing, at which he found that Mr. Tapia was not indigent and should be required to reimburse the county some $46,000. However, that was a determination concerning present indigency and obligation to reimburse (§ 987.8). It has no effect on counsel's right to be paid for services.

modified to change the authorization from section 987.9 to section 987, subdivision (b), and that modification had been printed in the advance sheets (*Keenan* v. *Superior Court* (1982) 31 Cal.3d 243 [subsequently modified again and reprinted at 31 Cal.3d 424 [180 Cal.Rptr. 489, 640 P.2d 108]].) The application incorrectly cited section 987.9 and the first version of *Keenan* and did not mention *Keenan*'s subsequent history. By June 8, 1982, when the court filed its order appointing petitioner, *Keenan* had become final in its new version (petn. for rehg. den. June 3, 1982).

The appointment order did not cite the authority for petitioner's appointment. The county assumes, with no evidence, that the court relied upon the erroneous code section and the wrong version of *Keenan*. But where the record is silent, it is presumed that the court acted correctly. In any case, however, on February 10, 1983, before petitioner performed the services for which he was not paid, the court filed a new order explicitly grounding the appointment upon section 987, subdivision (b). No jurisdictional defect has been shown.

> (2) *Do principles of estoppel or contract bar*
> *reduction of petitioner's fees after the*
> *services were rendered and partial payment was made?*

■ Petitioner's most compelling argument against the trial court's order reducing his compensation is that the county should be estopped to assert any defect in the appointment and compensation order and prevented from altering the terms of the contract. Petitioner asserts that he relied upon Judge Kawaichi's orders and that ". . . as time for trial drew near, petitioner totally set aside his other clients and law practice, and devoted full time to the preparation and trial of the defense of the Tapia capital case." He states that at no time prior to the middle of May was he informed that the county or any member of the court challenged the validity of Judge Kawaichi's orders. He contends that as a matter of fairness his rate of compensation should not have been changed after he performed his services to Mr. Tapia.

As with its other arguments, the county's argument against estoppel is confusing. Its essential point appears to be that petitioner could not justifiably rely upon an appointment order that was improper. The county argues that the order was improper because the application was based upon the improper version of *Keenan* and because the appointment was outside the county's contract with the bar association for appointment of counsel.

In its order reducing fees, the trial court disposed of the estoppel argument as follows: "Another consideration of fairness is the fact that Mr.

Gilbert relied on the original appointment under *Keenan* I in performing his duties. However, there was a subsequent order made pursuant to *Keenan* II which charged him with notice of the possibility that although the terms of the original order were intended, that there were possible applicable changes due to the change in law. The argument that the reliance was on the actions of the County in paying the first claims fails in that the mere act of paying those claims did not waive subsequent evaluation, since the appointing order was conditional.''

Interpretation of this order to extract the court's meaning is not easy. The court made much of the fact that the original appointment order was changed before petitioner performed the services for which he was not paid. The first order had stated that petitioner was ''designated as co-counsel with Jules F. Bonjour, Jr.,'' set his rate of compensation, and ordered that he submit a complete accounting upon completing of his services. The second order provided as follows: ''GOOD CAUSE APPEARING, [¶] IT IS HEREBY ORDERED that Howard M. Gilbert is appointed as second counsel for the defendant JOHN TAPIA in the above entitled action pursuant to Penal Code § 987(b). His rate of compensation pursuant to the criteria set forth in Penal Code § 987.3 shall be $75.00 per hour plus $750.00 per day for trial. [¶] IT IS FURTHER ORDERED that upon submission of statements to the court, and upon approval of said statements by the court, Mr. Gilbert shall be paid by the county monthly commencing on March 1, 1983 until such time as his services on behalf of the defendant are completed.''

In the challenged ruling, the court concluded that this second order charged petitioner with notice that there might be changes in the appointment and that this second order was conditional. It is not clear why the court drew those conclusions. Perhaps the *fact of* a second order suggested that the appointment was not unalterable. But there was nothing in the second order to suggest that a change in the terms of compensation might take place after the services had been performed. There was nothing conditional about the *rate of compensation.* The only risk to petitioner apparent from the second order was the risk that the court might not approve all items in the statements submitted by petitioner. At least on the face of the two appointment orders there was no suggestion that petitioner could not rely on the rate of compensation.

In *Board of Supervisors* v. *Superior Court* (1983) 147 Cal.App.3d 206, 212-213 [195 Cal.Rptr. 67], we discussed estoppel: ''The accepted description of the doctrine of estoppel and its application against a public agency is stated in *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 489, 493 . . .: ' ''Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped

must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury" . . . . ▆ It is settled that "[t]he doctrine of equitable estoppel may be applied where justice and right require it . . ." [although] an estoppel will not be applied against the government if to do so would effectively nullify "a strong rule of policy, adopted for the benefit of the public, . . ." ' (*Los Angeles County Flood Control Dist.* v. *Mindlin* (1980) 106 Cal.App.3d 698, 709 . . . .)"

The difficulty in applying the usual estoppel test to this case is that petitioner dealt with more than one public entity. His argument is that the county should be estopped by the court's action, raising the question of whether the county and the court should be considered one "party" for purposes of estoppel analysis.

▆ We need not answer that question, because we find analysis under contract principles to be more useful. The court, by its appointment orders, offered petitioner the opportunity to represent Mr. Tapia at a rate of $75 per hour and $750 per day of trial. Petitioner accepted the offer by performing the requested services. The contract was breached by the court when it failed to perform its obligation to pay petitioner according to the offered rate of compensation.

The court rejected the contract theory on the following grounds: "Mr. Eskanos, Mr. Gilbert's attorney, has argued that there is a contract between the court and Mr. Gilbert as defined in the civil code. But the documents in this case clearly show a petition by a criminal defendant in a death penalty case and an order granting the petition upon conditions. The element of mutual consent is not satisfied from the face of the pleadings. Indeed, if there was consent, it was by the defendant through his attorney."

The court's rejection of the contract theory is a bit simplistic. "If the offer calls simply for the doing of an act, performance will be a sufficient acceptance, and it is ordinarily not necessary for the offeree first to notify the offeror that he intends to accept and perform. [Citations.]" (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 147, p. 143.) Thus, mutual *expression* of consent is not required.

The remaining questions are whether a court order can be considered an offer of a contract and whether the court can make an offer which binds the county. The California Supreme Court has forcefully stated that when a court orders services in the support of persons charged with crimes, the

expenses incurred are "'county charges'" and must be paid by the county auditor. (See *Corenevsky* v. *Superior Court* (1984) 36 Cal.3d 307, 324-325 [204 Cal.Rptr. 165, 682 P.2d 360].) Thus, there would seem to be no question that the court may make an "offer" to an attorney which binds the county.

It may not be common practice to characterize a court order appointing counsel as an "offer" to counsel. In fact, in *Arnelle* v. *City and County of San Francisco* (1983) 141 Cal.App.3d 693 [190 Cal.Rptr. 490], Division Two of this court concluded that an appointed attorney could not sue on contract or quasi-contract. However, there the court had not set a compensation rate before the services were rendered. The attorney challenged the court's finding that $12,352.16 was a reasonable amount and its refusal to pay the $27,369.94 balance on the attorney's bill. But dicta in *Arnelle* suggests that a contract theory would have applied if the amount of compensation had been agreed upon in advance. The court's pertinent discussion follows: "The rights and duties involved in representing indigent criminal defendants do not arise from contract. The attorney's duty to assist the indigent is statutory. (Bus. & Prof. Code, § 6068, subd. (h).) The indigent's right to counsel is constitutional. (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 . . .; *In re Williams* (1969) 1 Cal.3d 168, 174 . . . .) The county's duty to compensate the attorney and the attorney's right to be compensated are statutory. (§ 987.2, subd. (a).) *Thus the appointed attorney may not sue for compensation, based on contract or quasi-contract, unless such a cause of action is specifically created by statute.*

"That the arrangement in section 987.2, subdivision (a), is not to be considered a contract is made clear by the provision for a contract in subdivision (b): '[t]he sum provided for in subdivision (a) *may* be determined *by contract* between the court and one or more responsible attorneys after consultation with the board of supervisors . . . .' (Italics added [by the *Arnelle* court].) This subdivision clearly anticipates that the appointed attorney's compensation, either a flat fee or an hourly rate, will be established upon the attorney's appointment, *before* he has undertaken any performance under the contract. [Original italics.] *In such a case there would be a contract for the attorney to sue upon if he did not receive his agreed-upon compensation.* Here, however, appellant and respondent did not contract." (*Arnelle* v. *City and County of San Francisco, supra,* 141 Cal.App.3d at pp. 696-697, italics added except as noted above.)

If petitioner could sue upon the contract for not receiving the agreed-upon compensation, it follows that he could also challenge a new order by the court reducing the level of compensation after services had been rendered. The trial court's justification for this reduction centers on ". . . the effect

of the County Bar Association contract and the history of appointed counsel in conflict cases in Alameda County." The court observed in its order that ". . . the survival of the conflicts appointment panel depends upon a uniform system of appointment and compensation." It is apparent that after the trial was completed the court had second thoughts about having made an appointment outside of the bar association's panel.

The county argues that the new order is proper because the original appointment was improper. It argues these points more extensively than other points in the case. However, we conclude that the propriety of the first order is beside the point. Absent some showing of fraud committed by petitioner in obtaining an appointment outside of the bar association contract, petitioner was entitled to the compensation set in his contract. The fact that the court may have erred in its offer or in failing to consult with the board of supervisors cannot be used as a justification for denying petitioner the consideration offered in the court's order. The consequences of any error by the court must fall upon the county, not upon petitioner.

Let a peremptory writ of mandate issue directing the Alameda County Superior Court to vacate its order reducing petitioner's compensation and to enter a new order for payment in the originally agreed amount.

White, P. J., and Barry-Deal, J., concurred.