2 Cal.App.4th 1686 (1992)
5 Cal. Rptr.2d 7
COUNTY OF SANTA CLARA, Petitioner,
v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent; DIAN L. RODRIGUEZ, Real Party in Interest.
Docket No. H008792.
Court of Appeals of California, Sixth District.
January 29, 1992.
*1688 COUNSEL
Steven M. Woodside, County Counsel, and Robert J. Menifee, Chief Deputy County Counsel, for Petitioner.
Hugh T. Thompson for Respondent.
Dian L. Rodriguez, in pro. per., for Real Party in Interest.
OPINION
BAMATTRE-MANOUKIAN, J.
When an indigent person has been ordered to show cause why he or she should not be found in contempt and punished for alleged disobedience of an order to pay child support, and the potential punishment includes a possible jail sentence, must the county provide an attorney, at public expense, to represent the indigent citee? We hold that it must.
The Santa Clara County Superior Court ordered Robert Legaspi to make specified payments for the support of his two minor children. Thereafter the children's mother applied for an order to show cause why Legaspi should not be held in contempt, alleging that (among other things) Legaspi had not made the child support payments despite knowledge of the order and ability to comply with it.
The superior court ordered Legaspi to show cause "WHY THIS COURT SHOULD NOT FIND YOU GUILTY OF CONTEMPT AND PUNISH YOU FOR WILLFULLY DISOBEYING ITS ORDERS AS SET FORTH IN THE DECLARATION BELOW...." The mother's appended declaration alleged 16 instances of disobedience of court orders. (Code Civ. Proc., § 1209, subd. (a)(5).) The order to show cause was issued on a Judicial Council form, specified by rule 1285.60 of the California Rules of Court, which included on its face a notice, partly printed and partly rubber-stamped, that "[a] contempt proceeding is criminal in nature. If the court finds you in contempt, the possible penalties include jail sentence and fine. [¶] FAILURE TO COMPLY MAY RESULT IN *1689 SANCTIONS. [¶] You are entitled to the services of an attorney who should be consulted promptly in order to assist you. If you cannot afford an attorney, the court may appoint an attorney to represent you."
Appearing in response to the order to show cause, Legaspi represented to the superior court that he was indigent and on that ground asked that the court appoint an attorney for him. Reportedly the court asked the Santa Clara County public defender to represent Legaspi and the public defender declined to do so; at oral argument in this court counsel for the county acknowledged that both the public defender and the nonprofit organization that contracts with the county to provide attorneys for litigants when the public defender declares a conflict of interest had previously taken the position they would not represent citees in contempt proceedings to enforce Family Law Act orders. The superior court then appointed attorney Dian L. Rodriguez, the real party in interest herein, "to assist and represent ... LEGASPI...." The order further provided that "[t]he Court will direct the County to pay the fees and costs for this representation if the citee is unable to employ counsel."[1] Rodriguez thereafter represented Legaspi in the contempt proceedings.
Legaspi was ultimately found guilty of six counts of failure to pay court-ordered child support and was sentenced to jail.[2]
Rodriguez then applied for an order that the county pay her attorney fees. The county opposed the application. The superior court ordered the county *1690 to pay specified attorney fees and costs but stayed its order to permit the county to seek appellate review.
The county then petitioned this court for a writ of mandate or prohibition to vacate the order for payment of attorney fees.
The order was directly appealable as a final determination of a collateral matter. (Cf., e.g., Cal. Civil Appellate Practice (Cont.Ed.Bar 1985) § 2.20, pp. 37-38.) (1) In general an extraordinary writ should not issue if there is an adequate remedy by appeal (cf., e.g., Conway v. Municipal Court (1980) 107 Cal. App.3d 1009, 1015 [166 Cal. Rptr. 246]); where there is an apparently adequate remedy by appeal the court in which review is sought need not reach the merits but may simply deny the petition summarily. The determination whether an available appeal would provide an adequate remedy is entrusted to the discretion of the reviewing court. (Cf., e.g., Anderson v. Superior Court (1989) 213 Cal. App.3d 1321, 1328 [262 Cal. Rptr. 405]; Hogya v. Superior Court (1977) 75 Cal. App.3d 122, 129 [142 Cal. Rptr. 325].) Here the county represents, without contradiction, that this is but one of at least 14 pending contempt matters in which the superior court has appointed counsel and may be expected to order the county to pay attorney *1691 fees, and that the superior court has adopted a form order for payment of attorney fees by the county in such cases. We agree with the county that in the circumstances direct appeal would not be an adequate alternative remedy: Consideration of the merits of the writ petition is appropriate to avoid a multiplicity of appeals raising the same issue. (Cf., e.g., Anderson v. Superior Court, supra, 213 Cal. App.3d at p. 1328; People v. Superior Court (Schomer) (1970) 13 Cal. App.3d 672, 676 [91 Cal. Rptr. 651].) We have considered the petition on its merits, have requested and received supplemental briefing, and have heard oral argument. We shall conclude that the superior court's order was proper and shall deny the county's petition.
The county argues that the superior court was neither required nor empowered to appoint counsel to represent Legaspi, and that even had the superior court been empowered to appoint counsel it had no authority to order the county to pay attorney fees.[3]
Courts in many other states, and several federal courts, have held that indigent citees in Legaspi's position are entitled to have counsel appointed to represent them,[4] but it appears that no California court has directly addressed *1692 the question in a reported case.[5] (2) We find ample reason to conclude, consistent with decisions from other jurisdictions, that if Legaspi was unable to afford counsel and if he did not waive his right to be represented, the court was required to appoint counsel to represent him.
California has recognized a number of situations in which an indigent litigant will be entitled to have counsel appointed. The most obvious example is that of an indigent criminal defendant. (U.S. Const., 6th & 14th Amends.; Cal. Const. art. I, § 15; Powell v. Alabama (1932) 287 U.S. 45, 71-72 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527]; Gideon v. Wainwright (1963) 372 U.S. 335, 343-345 [9 L.Ed.2d 799, 804-806, 83 S.Ct. 792, 93 A.L.R.2d 733]; Argersinger v. Hamlin (1972) 407 U.S. 25, 37, 40 [32 L.Ed.2d 530, 538-540, 92 S.Ct. 2006]; People v. Marsden (1970) 2 Cal.3d 118, 123 [84 Cal. Rptr. 156, 465 P.2d 44]; In re Kathy P. (1979) 25 Cal.3d 91, 103 [157 Cal. Rptr. 874, 599 P.2d 65]; Pen. Code, §§ 686, 987, 987.2; but cf. Scott v. Illinois (1979) 440 U.S. 367, 369, 373-374 [59 L.Ed.2d 383, 386, 388-389, 99 S.Ct. 1158].) In other cases the entitlement has been declared as a matter of procedural due process (cf., e.g., Salas v. Cortez (1979) 24 Cal.3d 22 [154 Cal. Rptr. 529, 593 P.2d 226]), or established by statute, or both.[6] No statute provided for appointment of counsel in Legaspi's case; the question is whether his due process rights included a right to such an appointment.
*1693 The clearest predicate for a conclusion that an indigent litigant will be entitled to appointed counsel as a matter of due process will be a determination that the litigant may lose his or her physical liberty if he or she loses the litigation. (Lassiter v. Department of Social Services, supra, 452 U.S. 18, 25 [68 L.Ed.2d 640, 648]; cf. Argersinger v. Hamlin, supra, 407 U.S. 25, 37 [32 L.Ed.2d 530, 538-539]; In re Gault, supra, 387 U.S. 1, 41 [18 L.Ed.2d 527, 553-554]; see Walker v. State Bar (1989) 49 Cal.3d 1107, 1116 [264 Cal. Rptr. 825, 783 P.2d 184]; Guardianship of Ethan S. (1990) 221 Cal. App.3d 1403, 1412 [271 Cal. Rptr. 121].)[7] Certainly, at the time he asked the court to appoint counsel, Legaspi confronted possible loss of physical liberty: Code of Civil Procedure section 1218 provides that a person found guilty of a contempt may be imprisoned up to five days, the order to show cause expressly informed Legaspi that "the possible penalties include jail sentence," and in fact Legaspi was ultimately sentenced to jail.[8]
*1694 The county argues that if counsel is to be appointed at all, a due process right to such an appointment should be found only in cases so complex as to place in doubt the citee's ability to represent himself or herself. We find the argument unpersuasive: In Lassiter v. Department of Social Services, supra, 452 U.S. 18, 25-31 [68 L.Ed.2d 640, 648-652], the United States Supreme Court made clear that complexity, as a determinant of what due process requires, will come into play only in a situation in which there is no risk the citee will lose his or her personal freedom. Where personal freedom is at stake, a due process basis for appointment of counsel is established without consideration of other possible determinants.
In the circumstances of record Legaspi, as an indigent litigant, was entitled to have counsel appointed to represent him, and the superior court had a corresponding duty to make the appointment.
(3) But this conclusion does not resolve the question, more immediately presented by the county's petition, whether the superior court could also order the county to pay the appointed attorney. Courts in other jurisdictions have usually seemed to assume that a court's duty to appoint counsel connotes a power to order an appropriate public entity to pay appointed counsel's fees. But many California cases have made clear that, in this state, even where a court must or may appoint counsel, it cannot order a public entity to pay attorney fees absent statutory provision for such payment. (Cf. Payne v. Superior Court, supra, 17 Cal.3d 908, 920, fn. 6; Arnelle v. City and County of San Francisco (1983) 141 Cal. App.3d 693, 696 [190 Cal. Rptr. 490]; County of Tulare v. Ybarra (1983) 143 Cal. App.3d 580, 586 [192 Cal. Rptr. 49]; County of Los Angeles v. Superior Court, supra, 102 Cal. App.3d 926, 929-931; County of Fresno v. Superior Court (1978) 82 Cal. App.3d 191, 194-196 [146 Cal. Rptr. 880]; cf. also Yarbrough v. Superior Court, supra, 39 Cal.3d 197, 200 ["the trial court's authority to appoint counsel is independent of its power to order compensation"], 201, 207; Lamont v. Solano County (1874) 49 Cal. 158, 159; Rowe v. Yuba County (1860) 17 Cal. 61, 62-63; Cunningham v. Superior Court (1986) 177 Cal. App.3d 336, 357 [222 Cal. Rptr. 854]; Gilbert v. Superior Court (1985) 169 Cal. App.3d 148, 157 [215 Cal. Rptr. 305].)
Obviously this rule suggests that in California an indigent litigant's right to have counsel appointed may in some circumstances be an empty one in light of the recent holding that attorneys cannot be compelled to render free services to indigent litigants. (Cunningham v. Superior Court, supra, 177 Cal. App.3d 336, 357; cf. also Yarbrough v. Superior Court, supra, 39 Cal.3d 197, 208 (dis. opn. of Bird, C.J.).) But we need not resolve the dilemma in this case: We conclude that this proceeding was so clearly criminal in nature *1695 as to bring it within the statutory provision for public compensation of appointed counsel contained in Penal Code section 987.2.
Section 987.2 provides, in part pertinent to Santa Clara County and to the circumstances of this case, that "[i]n any case in which a person ... desires but is unable to employ counsel, and in which counsel is assigned in the superior court ... to represent the person in a criminal trial, proceeding or appeal, the following assigned counsel shall receive a reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county: [¶].... [¶] (3) In a case in which the court finds that, because of a conflict of interest or other reasons, the public defender has properly refused." (Pen. Code, § 987.2, subd. (a)(3).) This case was handled in the superior court and briefed and argued by all parties in this court upon the theory that the public defender had refused to represent Legaspi; implicit in the superior court's order for attorney fees was a finding that the public defender had (as specified in the statute) "properly" refused. We are satisfied that any further steps the superior court might have taken before appointing Rodriguez were rendered futile and thus as a practical matter unnecessary by the previously announced policies of the public defender and of the contract conflicts program to decline to represent indigent citees in cases such as this. The only question is whether this contempt proceeding was "a criminal trial [or] proceeding" for purposes of section 987.2.
California courts have repeatedly held, usually for purposes of identifying the citee's constitutional rights, that because of the potential penalties a contempt proceeding is "criminal in nature." (E.g., Raiden v. Superior Court (1949) 34 Cal.2d 83, 86 [206 P.2d 1081]; In re Witherspoon (1984) 162 Cal. App.3d 1000, 1001 [209 Cal. Rptr. 67] [alleged contempt by failure to pay court-ordered child support]; In re Martin (1977) 71 Cal. App.3d 472, 480 [139 Cal. Rptr. 451]; McCann v. Municipal Court (1990) 221 Cal. App.3d 527, 537 [270 Cal. Rptr. 640]; Conn v. Superior Court (1987) 196 Cal. App.3d 774, 784 [242 Cal. Rptr. 148]; People v. Derner (1986) 182 Cal. App.3d 588, 591 [227 Cal. Rptr. 344]; Martin v. Superior Court (1971) 17 Cal. App.3d 412, 416 [95 Cal. Rptr. 110] ["quasi criminal in nature"]; In re Liu (1969) 273 Cal. App.2d 135, 141 [78 Cal. Rptr. 85].) Plainly the characterization fits the case before us, in which Legaspi was accused of conduct in defiance of a court order which might also have been pursued by misdemeanor complaint (Pen. Code, §§ 166, subd. 4, 270) and was expressly threatened with penalties which, although more restricted under Code of Civil Procedure section 1218 than they would have been under the arguably applicable Penal Code sections, nonetheless could have entailed a jail sentence imposed not to compel compliance but rather to punish noncompliance.
*1696 We must conclude the Legislature intended Penal Code section 987.2 to extend to a proceeding such as this.
Because all parties and the superior court proceeded on the assumption the public defender had refused to represent Legaspi, and no party has timely challenged the superior court's implicit finding that the refusal was proper,[9] the question whether the public defender should have undertaken this case is not before us. But we note that subdivision (a) of Government Code section 27706 charges a public defender to "defend ... any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior, municipal or justice courts at all stages of the proceedings, including the preliminary examination." (Italics added.) The county's argument, pressed with particular vigor at oral argument, that section 27706 (read as a whole and with attention to details pertinent only to proceedings under the Penal Code) cannot be meant to extend to contempt proceedings under the Code of Civil Procedure, does not satisfy us why the word "contempt" is included, disjunctively and without further qualification, in section 27706. Inclusion of the word seems clearly to mean that a public defender should in appropriate circumstances of indigence undertake the representation of one charged at least with a criminal contempt. Penal Code section 987.2 is patently designed to provide counsel when (in a county such as this) the public defender and contract counsel will not. Surely section 987.2 should be deemed to extend to proceedings to which Government Code section 27706 is applicable.
In any event the proceeding before us is indistinguishable, in any sense relevant to the purpose of Penal Code section 987.2, from any other "criminal trial [or] proceeding": The decision to proceed was made not by the complaining mother but by the superior court. Had the mother's application for an order to show cause been denied there would have been no proceeding. The state, through the office of the superior court which executed the order to show cause, commenced the contempt proceeding. Thereafter the proceeding was maintained by the authority of the state court, for the expressed purpose of punishing Legaspi for an asserted violation of law by (among other possible penalties) ordering him to serve time in jail. We are satisfied that this was a criminal proceeding for purposes of Penal Code *1697 section 987.2, and therefore that the trial court's order was authorized by law.
We observe that in the long run appointment of counsel to represent indigent citees is likely to be less expensive and more efficient than having these individuals represent themselves. The appointment of counsel serves the interests of the court as well as those of the litigants. These facts may furnish some comfort to the county, which ultimately bears the lion's share of the cost of the entire judicial process. All of us who have served on the family law bench recognize not only the greater fairness but also the increased efficiency which results when the citee has counsel.
We deal with only the case before us. Any broader statement must come from the Legislature. In this court's view an indigent person upon whom an order to show cause re contempt is served in a proceeding for alleged past violation of a Family Law Act order, and who by virtue of the order to show cause is exposed to deprivation of liberty as punishment for the alleged violation, and who shows that he or she is indigent, shall be entitled to effective assistance of counsel, provided at public expense, unless he or she chooses to waive the right.
The petition for writ of mandate or prohibition is denied.
Agliano, P.J., and Elia, J., concurred.
A petition for a rehearing was denied February 19, 1992, and petitioner's application for review by the Supreme Court was denied April 16, 1992. Panelli, J., was of the opinion that the application should be granted.
NOTES
[1] The appointment order read in full: "The Court appoints DIAN L. RODRIGUEZ as counsel to assist and represent ROBERT LEGASPI, citee in the Order to Show Cause and Declaration for Contempt filed February 20, 1991, in this case. The contempt proceeding is criminal in nature. The purpose of the proceeding is pun[i]tive, to punish the citee for past disobedience, rather than to coerce future conduct. If the Court finds the citee in contempt, the possible penalties include jail sentence and fine. (Code Civ. Proc. § 1218. In re Feiock (1989) 215 Cal. App.3d 141 [263 Cal. Rptr. 437].) The citee is entitled to the services of an attorney. If he is unable to employ counsel, the Court must assign counsel to defend him. (Pen. Code § 987.) If the citee believes he or she is unable to employ counsel, the Court will require him or her to file a financial statement under penalty of perjury. [¶] The Court understands the Public Defender of the County of Santa Clara has declined to represent the citee in this matter. The Court, therefore, makes this appointment of counsel to assist and represent the citee. The Court will direct the County to pay the fees and costs for this representation if the citee is unable to employ counsel."
[2] The "order after hearing," prepared by counsel for the mother and signed by the court, read in full as follows:

"A hearing in the above captioned matter came regularly before the Court on April 16, 1991, the Honorable Donald Clark presiding.
"Present in Court were Petitioner, MICHELE LEGASPI, represented by ELEANOR M. DONOHUE, and Respondent ROBERT LEGASPI, represented by DIAN RODRIGUEZ.
"Evidence was presented and arguments were made by both counsel, after which Respondent was found guilty beyond a reasonable doubt of six counts of contempt. The court found that all elements of contempt were proven. Said contempt charges were:
"1. Respondent failed to pay Court ordered child support on 12/1/90 in the amount $82.50.
"2. Respondent failed to pay Court ordered child support on 12/1/90 in the amount of $82.50.
"3. Respondent failed to pay Court ordered child support on 1/1/91 in the amount of $82.50.
"4. Respondent failed to pay Court ordered child support on 1/1/91 in the amount of $82.50.
"5. Respondent failed to pay Court ordered child support on 2/1/91 in the amount of $82.50.
"6. Respondent failed to pay Court ordered child support on 2/1/91 in the amount of $82.50.
"The Court has quoted In Re Marriage of Regnery [1989] 214 Cal. App. 3rd 1367 [263 Cal. Rptr. 243]. The Court found that Respondent's efforts to enter the labor market were limited to job seeking in the title officer field, and he had an apparent unwillingness to make reasonable efforts to accept either temporary or permanent work in another field. Further Respondent has admitted to purchasing some items of clothing during the times that he failed to pay support.
"Respondent is hereby sentenced to three days on each count of contempt, for a total of eighteen (18) days, twelve (12) days suspended. Respondent shall spend six days in jail on the weekends beginning May 4, and 5, 1991 an[d] continuing each weekend until sentence is completed. Three years probation shall be imposed, during which time he shall obey all court orders.
"Each party shall bear their own attorney's fees and costs.
"The remaining contempt charges were dismissed with prejudice."
[3] We acknowledge scholarly suggestions that an indigent litigant's right to appointed counsel, and to have appointed counsel paid from public funds, should be declared for civil cases generally. (See, e.g., Quail v. Municipal Court (1985) 171 Cal. App.3d 572, 577-593 [217 Cal. Rptr. 361] (conc. and dis. opn. of Johnson, J.); Note, The Right to Counsel in Civil Litigation (1966) 66 Colum. L. Rev. 1322; Note, The Indigent's Right To Counsel In Civil Cases (1967) 76 Yale L.J. 545.) The facts of this case, and the holdings of other appellate courts in other cases, give us neither the occasion nor the freedom to consider so broad a proposition: The constraints of the common law method and of our position in the judicial hierarchy require that we consider only the case before us, and that we do so in light of the decisions of other courts to the extent those decisions control ours either directly or by compelling analogy. (Cf. Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455-456 [20 Cal. Rptr. 321, 369 P.2d 937].)
[4] Cf., e.g., Mead v. Batchlor (1990) 435 Mich. 480, 493-496, 505-506 [460 N.W.2d 493, 499-500, 504-505]; Sanders v. Shephard (1989) 185 Ill. App.3d 719, 729-730 [133 Ill. Dec. 712, 541 N.E.2d 1150, 1156-1157] (custody order compared to support order); In re Marriage of Stariha (Ind. Ct. App. 1987) 509 N.E.2d 1117, 1120-1121; Cox v. Slama (Minn. 1984) 355 N.W.2d 401, 402-404 (right arises at point in proceedings where "incarceration is a real possibility"); McNabb v. Osmundson (Iowa 1982) 315 N.W.2d 9, 12-14; Tetro v. Tetro (1975) 86 Wn.2d 252, 254-255 [544 P.2d 17, 19]; Otton v. Zaborac (Alaska 1974) 525P.2d 537, 538; Walker v. McLain (10th Cir.1985) 768 F.2d 1181, 1183-1185; Ridgway v. Baker (5th Cir.1983) 720 F.2d 1409, 1413-1415; cf. also Henkel v. Bradshaw (9th Cir.1973) 483 F.2d 1386, 1389-1390. Commentators have supported the right of an indigent citee to appointed counsel in such proceedings. Cf., e.g., Hermann & Donahue, Fathers Behind Bars: The Right to Counsel in Civil Contempt Proceedings (1984) 14 N.M.L. Rev. 275; Comment, The Indigent Defendant's Right to Court-Appointed Counsel in Civil Contempt Proceedings for Nonpayment of Child Support (1983) 50 U.Chi. L. Rev. 326; Mascolo, Procedural Due Process and the Right to Appointed Counsel in Civil Contempt Proceedings (1983) 5 W. New Eng. L. Rev. 601; cf. also Note, Modern Discussion of a Venerable Power: Civil Versus Criminal Contempt and its Role in Child Support Enforcement: Hicks v. Feiock (1988) 22 Creighton L. Rev. 163.
[5] California has long acknowledged that a citee in a contempt proceeding has a due process right to be represented by an attorney he or she has retained for the purpose (cf. In re Shelley (1961) 197 Cal. App.2d 199, 202 [16 Cal. Rptr. 916]), but counsel have cited and we have found no California case that explores the situation in which the citee cannot afford to retain counsel.
[6] A right to court-appointed counsel has been recognized, for example, for a minor respondent in juvenile delinquency proceedings (In re Gault (1967) 387 U.S. 1, 41 [18 L.Ed.2d 527, 553-554, 87 S.Ct. 1428]; Welf. & Inst. Code, § 634; Cal. Rules of Court, rule 1412(h)(2)(A)); for a person proposed to be committed to prison upon expiration of his or her youth authority commitment (Welf. & Inst. Code, § 1781); for a parent (In re Christina H. (1986) 182 Cal. App.3d 47, 49 [227 Cal. Rptr. 41]; Cleaver v. Wilcox (9th Cir.1974) 499 F.2d 940, 944-945; cf. Welf. & Inst. Code, § 317, subd. (b); Cal. Rules of Court, rule 1412(h)(1)(B); cf. In re Ammanda G. (1986) 186 Cal. App.3d 1075, 1079-1080 [231 Cal. Rptr. 372]) and in specified circumstances for a minor respondent (Welf. & Inst. Code, § 317, subd. (c)) in juvenile dependency proceedings; for a parent in proceedings to declare his or her child free from parental custody and control (Civ. Code, § 237.5, subd. (b); cf. In re Jacqueline H. (1978) 21 Cal.3d 170, 174, 176 [145 Cal. Rptr. 548, 577 P.2d 683]; cf. also Lassiter v. Department of Social Services (1981) 452 U.S. 18, 31-34 [68 L.Ed.2d 640, 652-654, 101 S.Ct. 2153]); for a noncustodial parent accused of neglect in stepparent adoption proceedings (In re Jay R. (1983) 150 Cal. App.3d 251, 260-265 [197 Cal. Rptr. 672]); for defendants in proceedings prosecuted by the state to determine paternity (Salas v. Cortez, supra, 24 Cal.3d 22, 34); for defendants in actions to reimburse counties for child support payments under Welfare and Institutions Code section 11350 (cf. County of Ventura v. Tillett (1982) 133 Cal. App.3d 105, 114 [183 Cal. Rptr. 741]; see County of Los Angeles v. Superior Court (1980) 102 Cal. App.3d 926, 929 [162 Cal. Rptr. 636]); for a person who seeks review of his or her certification for intensive treatment (Welf. & Inst. Code, §§ 5254.1, 5276) or for a conservatee or proposed conservatee (id. § 5365) in Lanterman-Petris-Short Act proceedings; and for an adult developmentally disabled patient seeking release (Welf. & Inst. Code, § 4801).

Trial courts have discretionary power to appoint counsel for, for example, a parolee in parole revocation proceedings (Gagnon v. Scarpelli (1973) 411 U.S. 778, 783-791 [36 L.Ed.2d 656, 662-667, 93 S.Ct. 1756]; In re Love (1974) 11 Cal.3d 179, 185-191 [113 Cal. Rptr. 89, 520 P.2d 713]); a parent in juvenile delinquency proceedings (Welf. & Inst. Code, § 634; Cal. Rules of Court, rule 1412(h)(2)(B)); a minor in proceedings to terminate parental custody and control (Civ. Code, § 237.5, subd. (a); cf. In re Laura F. (1983) 33 Cal.3d 826, 839-840 [191 Cal. Rptr. 464, 662 P.2d 922]); and for a private conservator in Lanterman-Petris-Short Act proceedings (Welf. & Inst. Code, § 5370.1).
The Supreme Court has recognized that an indigent prisoner who is a defendant in a bona fide legal action threatening his or her interests has a constitutional right to access to the courts to be heard in his or her defense, and that as a last alternative means of implementing the access right a trial court is authorized to appoint counsel for such a defendant. (Yarbrough v. Superior Court (1985) 39 Cal.3d 197, 200-201 [216 Cal. Rptr 425, 702 P.2d 583]; Payne v. Superior Court (1976) 17 Cal.3d 908, 923-924 [132 Cal. Rptr. 405, 553 P.2d 565].)
[7] In cases of this kind, the state through its courts may obviate the need to appoint counsel to represent the indigent citee by making clear at the outset that in any event the citee will not be imprisoned. (Cf. Scott v. Illinois, supra, 440 U.S. 367, 369, 373-374 [59 L.Ed.2d 383, 386, 388-389]; Argersinger v. Hamlin, supra, 407 U.S. 25, 40 [32 L.Ed.2d 530, 540].) That did not occur in this case, and ultimately Legaspi was sentenced to a jail term.
[8] On the record before us we need not grapple with distinctions between "criminal" and "civil" contempt or between federal and state grounds for the conclusions we reach. (Cf. Hicks v. Feiock (1988) 485 U.S. 624 [99 L.Ed.2d 721, 108 S.Ct. 1423]; In re Feiock, supra, 215 Cal. App.3d 141 [263 Cal. Rptr. 437]; cf. also Note, Modern Discussion of a Venerable Power: Civil Versus Criminal Contempt and its Role in Child Support Enforcement: Hicks v. Feiock, supra, 22 Creighton L. Rev. 163.) Patently the proceedings here were initiated and conducted under the punitive provisions of Code of Civil Procedure Section 1218, rather than under the remedial provisions of id., section 1219. There is no showing that Legaspi was ever formally given an opportunity to avoid imprisonment by voluntarily purging the contempt. Thus even under "the most conservative analysis, that provided under the federal Constitution," this was a criminal contempt subject to federal due process guarantees. (In re Feiock, supra, (1989) 215 Cal. App.3d 141, 144-145, 145-146, fn. 6.)
[9] In a petition for rehearing in this matter the county suggests that in light of our "determination that in the event of indigency the Public Defender must accept appointments in contempt matters initiated under the Code of Civil Procedure" the superior court could not have found the public defender's refusal proper and there could not have ordered payment of appointed counsel. The county may have correctly predicted the outcome in a future case in which the issue is properly presented, but in this case the county's adoption of what it perceives our "determination" to be is both untimely and inconsistent with the position it took and strongly argued to this court before our opinion was filed.