[No. B104037. Second Dist., Div. Three. Oct. 3, 1996.]

KAREN B. AMARAWANSA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest.

**COUNSEL**

Larry M. Roberts for Petitioners.

John T. Philipsborn as Amicus Curiae on behalf of Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent and for Real Party in Interest.

**OPINION**

KLEIN, P. J.—Petitioners Karen B. Amarawansa, Barbara Bayliss, Steven P. Beltran, Hans F. Berg, Murray S. Berns, Claire Boudov, John Cahill, Maureen Donnelly Carlson, Frank Charles Ciafone, Jr., Frederick L. Darvey, R. Keith Davis, Robert A. Devine, Karen Fite, Linda Rose Fessler, Roberto Flores, Anthony R. Garcia, Barry Allen Herzog, Alex Iglesias, Alaleh Kamran, Joseph D. MacKenzie, James E. McNamara, John P. Newman, Kelly O'Brien, Michael A. Salazar, Darold M. Shirwo, Ronald W. Stenlake, and Paula S. Teske (collectively, petitioners) are panel attorneys originally appointed by respondent Superior Court of Los Angeles County (superior court) to represent parties in juvenile dependency cases at the rate of $45 per hour. The superior court adopted a flat fee compensation system for *new* cases, and subsequently extended the flat fee system to *existing* cases which petitioners had undertaken to handle at the hourly rate. Petitioners brought this writ to compel the superior court to continue paying them compensation

at the rate of $45 per hour for the duration of the existing cases rather than pursuant to the new flat fee system.[1]

The essential issue presented is whether petitioners have a contractual right to be compensated at the rate of $45 per hour for the *duration* of the existing cases.

Because there was no contract to pay counsel a specified hourly rate for the duration of said cases, and the superior court had the right to modify the offered compensation as to services not yet rendered, the petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioners are 27 attorneys who object to the application of a flat fee payment system adopted by the superior court for dependency cases wherein the attorneys had accepted appointments under the previously existing payment schedule of $45 per hour.

By way of background, over the years, the superior court periodically has modified the level of compensation paid to panel attorneys in dependency cases. In early 1993, the superior court was paying $50 per hour for in-court legal services and $40 per hour for preparatory work.

In an effort to cope with budgetary cutbacks, on May 11, 1993, the superior court issued a memorandum imposing new limits on compensation in dependency cases. The memorandum provided in relevant part: "[E]ffective July 1, 1993, each WIC [Welfare and Institutions Code] § 317[2] court-appointed attorney will be subject to: (1) a flat hourly billing rate of $45 per hour for court time and preparation time; and (2) a limit of $90,000 per fiscal year for services rendered at the rate of $45 per hour. Any attorney reaching the limit of $90,000 during the fiscal year will be subject to a reduced billing rate of $25 per hour for all claims during the remainder of that fiscal year." The May 1993 memorandum was in effect at the time petitioners were appointed to represent clients in the subject cases.

---

[1] A petition for writ of mandate may be brought to challenge a court's reduction of compensation to appointed counsel. (See *Gilbert* v. *Superior Court* (1985) 169 Cal.App.3d 148, 150-151 [215 Cal.Rptr. 305]; *Trask* v. *Superior Court* (1994) 22 Cal.App.4th 346, 348-350 [27 Cal.Rptr.2d 425].) Therefore, the matter is properly before this court.

[2] Welfare and Institutions Code section 317 provides in part: "(a) When it appears to the court that a parent or guardian of the minor desires counsel but is presently financially unable to afford and cannot for that reason employ counsel, the court may appoint counsel as provided in this section. [¶] (b) . . . . [¶] (c) In any case in which it appears to the court that the minor would benefit from the appointment of counsel the court shall appoint counsel for the minor as provided in this section. [¶] [(d)-(h)]."

All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

In a further attempt at cost containment, on December 21, 1995, the superior court issued another memorandum providing in relevant part: "Effective January 2, 1996, all WIC 317 Panel Attorneys appointed to represent children and parents in dependency cases shall be compensated at a flat rate of $760 per appointment." With respect to existing cases, the memorandum provided "hourly billings at an hourly $45.00 will continue for any client appointments made on or before December 30, 1995."

On June 13, 1996, the superior court issued a supplemental memorandum extending the flat fee compensation scheme to appointments made in pre-1996 cases. This memorandum provides: "Effective *July 1, 1996*: WIC 317 Panel Attorneys appointed to represent children or parents in any dependency case filed *on or before December 31, 1995* shall be compensated according to the following supplemental flat fee schedule: (a) Legal fees for all *pre-1996 cases* shall be paid at a fixed rate similar to new appointments . . . . (b) Fees due and owing for legal work *actually completed on or before June 30, 1996*, will be paid at the existing hourly rate of $45." (Italics added.)

The June 1996 memorandum further provides that services performed in pre-1996 cases after June 30, 1996, would be compensated as follows: (1) $380 for continued representation of an existing client where the case is in the pre-first review of permanent plan stage; (2) $200 for continued representation of a minor upon completion of the initial review of the permanent plan, or $100 for continued representation of an adult at the same stage; and (3) $250 for the filing of any extraordinary writ.

Due to the reduced compensation, some of the petitioners attempted to withdraw from representation of their clients, but the superior court refused to relieve petitioners.

On July 26, 1996, petitioners filed the instant petition for writ of mandate, alleging the superior court had breached its contract with panel attorneys as set forth in the May 11, 1993, memorandum establishing the $45 hourly rate, and that the superior court was estopped from changing the $45 hourly rate for pre-1996 cases.

On August 1, 1996, this court issued an alternative writ to examine petitioners' claim to compensation at the $45 hourly rate.

On August 9, 1996, after being served with the alternative writ, the superior court issued a written modification to the flat fee payment policy pertaining to panel attorney requests to be relieved from representing dependency clients. This latest modification states: "Panel attorneys who were

appointed on any new (1996) or pre-1996 case and who are unwilling or unable to continue representing clients under the flat-fee payment system, will no longer be required by the court to continue representing clients. In any such situation, a panel attorney may request to be completely relieved from his or her current caseload and to be removed from the panel. A list of the attorney's clients should be prepared, showing basic case information . . . and the date each is next set for hearing, in order to facilitate the re-assignment of cases and reappointment of a new DCLS [Dependency Court Legal Services] or panel attorney by the court. All dependency judges, commissioners and referees are requested to closely adhere to the flat-fee policy and to the changes set forth above."[3]

## CONTENTS

Petitioners contend: the superior court anticipatorily breached its contract with petitioners; the superior court is estopped to deny petitioners the agreed-upon rate of $45 per hour; trial judges are required to exercise discretion in awarding attorney fees for indigent defense; the superior court cannot unilaterally refuse to pay statutorily mandated attorney fees based upon fiscal concerns; the superior court abused its discretion by arbitrarily reducing the fees it will pay to appointed counsel; the flat fee mandated by the superior court is not reasonable; the arbitrary flat fee violates court rules; the flat fee creates a conflict of interest for petitioners; and petitioners have been denied equal protection under the law by being required to donate their services to the poor.

## DISCUSSION

1. *Petitioners have no contractual right to continuing compensation at the hourly rate of $45 for the duration of the pre-1996 cases.*

a. *The issue before this court.*

■ At the outset, it is important to define the precise issue raised by petitioners. The petition alleges "the May 11, 1993, policy memorandum/administrative order . . . constitutes an *offer* by the Respondent Court to compensate Petitioners at the rate of $45.00 per hour, including expenses, for representation of parties as court-appointed counsel in dependency matters pursuant to § 317. By accepting such appointments, and by rendering

---

[3]The record contains declarations from 13 superior court judges and commissioners, each of which states that since the superior court had adopted its fixed fee payment policy for dependency panel attorneys, there had been no shortage of qualified attorneys willing to accept cases.

legal services in said dependency matters, *Petitioners accepted the offer* set forth in the Respondent Court's administrative order of May 11, 1993." (Italics added.)

Petitioners concede in their reply papers "the concept of a 'flat fee' system *is not* in issue in the instant proceeding. [[4]] *The issue is Respondent's breach of the existing contract* by the imposition of that flat fee payment system for pre-1996 dependency cases, pursuant to Respondent's December 21, 1995 and June 13, 1996, Administrative Orders." (Second italics added.)

Thus, notwithstanding the numerous arguments raised by petitioners, the narrow issue presented by the petition is not the validity of the flat fee system, but merely whether the superior court properly extended the flat fee system to petitioners' pre-1996 cases.

b. *General principles.*

In *Gilbert* v. *Superior Court, supra,* 169 Cal.App.3d 148, a "criminal defense attorney . . . challenge[d] the trial court's reduction of his compensation as appointed counsel. He was originally appointed at $75 per hour and $750 per day of trial, but *after* trial the court reduced his total compensation from approximately $78,000 to under $40,000. The final compensation was based upon a county bar association fee schedule for its criminal defense panel, rather than upon the original fees set by the court. [*Gilbert*] conclude[d] that the [trial] court erred in reducing [the attorney's] fees after he had performed his services." (*Id.,* at pp. 150-151, italics added.)

Analyzing the case under contract principles, *Gilbert* stated: "The court, by its appointment orders, offered [counsel] the opportunity to represent [the client] at a rate of $75 per hour and $750 per day of trial. [Counsel] accepted the offer by performing the requested services. *The contract was breached by the court when it failed to perform its obligation to pay [counsel]* according to the offered rate of compensation." (*Gilbert* v. *Superior Court, supra,* 169 Cal.App.3d at p. 156, italics added.)

In characterizing the appointment order as an offer to counsel, *Gilbert* v. *Superior Court, supra,* 169 Cal.App.3d at page 157, distinguished *Arnelle* v. *City and County of San Francisco* (1983) 141 Cal.App.3d 693, 696-697 [190

---

[4]We note the California Supreme Court has adopted an optional flat fee payment system for appointed counsel in automatic appeals. (Guidelines for Fixed Fee Appointments, on Optional Basis, to Automatic Appeals and Related Habeas Corpus Proceedings in the California Supreme Court, eff. Jan. 1, 1994, West's California Rules of Court, State (1996 ed.) p. 1041 et seq.)

Cal.Rptr. 490], which stated: "The rights and duties involved in representing indigent criminal defendants do not arise from contract. The attorney's duty to assist the indigent is statutory. (Bus. & Prof. Code, § 6068, subd. (h).) The indigent's right to counsel is constitutional. [Citations.] The county's duty to compensate the attorney and the attorney's right to be compensated are statutory. ([Pen. Code,] § 987.2, subd. (a).) Thus, the appointed attorney may not sue for compensation, based on contract or quasi-contract, unless such a cause of action is specifically created by statute."

*Gilbert* reasoned that in *Arnelle*, "the court had not set a compensation rate before the services were rendered. The attorney challenged the court's finding that $12,352.16 was a reasonable amount and its refusal to pay the $27,369.94 balance on the attorney's bill. But dicta in *Arnelle* suggests that a contract theory would have applied if the amount of compensation had been agreed upon in advance." (*Gilbert v. Superior Court, supra,* 169 Cal.App.3d at p. 157.)

### c. *Gilbert case inapposite.*

Citing *Gilbert v. Superior Court, supra,* 169 Cal.App.3d 148, petitioners contend the May 1993 memorandum gave rise to a binding contract between counsel and the superior court, and the superior court has breached its agreement with petitioners to compensate them at $45 per hour for the duration of the pre-1996 cases.

As discussed above, in *Gilbert* the attorney had an appointment order from the superior court stating a rate of pay through trial, and counsel had completed the services for which compensation was being sought pursuant to the fee arrangement. *Gilbert* is distinguishable for numerous reasons.

First, the May 1993 memorandum upon which petitioners base their contract theory was not an "appointment order" but merely a policy memorandum from the superior court stating the rate of pay in dependency cases. The May 1993 memorandum did not appoint any of the petitioners to any particular cases. Said memorandum merely announced the amount of compensation the superior court was willing to pay to panel attorneys who were appointed to dependency cases as of that date.

Further, the May 1993 memorandum did not specify the period of time counsel would be compensated at the $45 hourly rate. The May 1993 memorandum did not purport to offer the $45 hourly rate for the duration of a dependency case, *which can last as long as 18 years* until the dependent

minor reaches the age of majority. Instead, said memorandum in effect advised the dependency bar that until further notice, the superior court would be paying $45 per hour to appointed counsel.

Moreover, the May 1993 memorandum upon which petitioners base their claim to compensation at the rate of $45 per hour was itself a change from the earlier rate of $50 per hour for in-court legal services due to an earlier effort at cost containment. Implicit in the May 1993 memorandum imposing new limits on attorney compensation was that fee arrangements for court-appointed counsel were subject to change.

Further, unlike *Gilbert*, wherein the trial court refused to pay counsel at the offered rate for services already performed (*Gilbert* v. *Superior Court, supra*, 169 Cal.App.3d at p. 156), this controversy involves compensation for services to be rendered in the future. The June 13, 1996, memorandum, extending the flat fee system to pre-1996 cases, properly specifies the new policy applies only prospectively, to services rendered after June 30, 1996. Clearly, as to services performed prior to July 1, 1996, petitioners were entitled to the compensation stated in the May 1993 and December 1995 memoranda. However, the superior court was not precluded from modifying the offered compensation as to future services.

For these reasons, we reject petitioners' claim they had a contractual right to be compensated at the rate specified in the May 1993 memorandum for the duration of their appointments in the pre-1996 cases.[5, 6]

### d. *Petitioners' reliance on section 317 misplaced.*

In a related argument, petitioners attempt to parlay their legal obligations towards their clients into a binding agreement with the superior court for compensation at the rate of $45 per hour. Petitioners assert they have a contractual right to be compensated in the pre-1996 cases at the hourly rate

---

[5]Presumably, if the superior court were to take the position that petitioners, by accepting the pre-1996 appointments, had committed to handling those cases at the fixed rate of $45 per hour *for up to 18 years*, and if the compensation for new dependency cases were to increase, petitioners would be urging a less expansive interpretation of the May 1993 memorandum.

[6]Petitioners have chosen to focus on the May 1993 memorandum to support their claim of a contractual right to compensation at the rate of $45 per hour for the duration of the pre-1996 cases. Petitioners have not proffered copies of the individual appointment orders wherein the superior court appointed them to the subject cases. At this court's request, petitioners have supplied a sample of the standard form appointment order utilized by the superior court in pre-1996 cases. There is nothing to show that in making such appointments, the superior court agreed petitioners would be compensated at the May 1993 level for the duration thereof or at any other specific rate of compensation.

"for services that Petitioners, as court-appointed counsel, must continue to provide pursuant to the statutory mandate of . . . § 317(d), [in] juvenile dependency actions."

Section 317, pertaining to appointed counsel in dependency cases, states in relevant part: "(d) The counsel appointed by the court shall represent the parent, guardian, or minor at the detention hearing and at all subsequent proceedings before the juvenile court. *Counsel shall continue to represent the parent or minor unless relieved by the court upon the substitution of other counsel or for cause.* The representation shall include representing the parent or the minor in termination proceedings and in those proceedings relating to the institution or setting aside of a legal guardianship." (Italics added; see *In re Tanya H.* (1993) 17 Cal.App.4th 825, 831 [21 Cal.Rptr.2d 503], rev. den. [statute provides for continuing representation by appointed attorney at all postappointment proceedings unless relieved by the court upon substitution of other counsel or for cause].)

The fact appointed counsel has a legal obligation to continue to represent the client until relieved by the court does not support the contention the attorney's compensation is *continuously* governed by the May 1993 memorandum. Therefore, there is no merit to petitioners' contention their legal duty towards their clients binds the superior court to the May 1993 compensation scheme.

2. *Estoppel theory similarly fails.*

In the alternative, petitioners contend the superior court is estopped to deny its obligation to compensate them at the rate of $45 per hour in their pre-1996 cases because petitioners detrimentally relied on the superior court's May 1993 memorandum offering such payment.

Leaving aside the issue of whether estoppel will lie against the superior court as a governmental entity (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423]; *Las Tunas Beach Geologic Hazard Abatement Dist.* v. *Superior Court* (1995) 38 Cal.App.4th 1002, 1014 [45 Cal.Rptr.2d 529]),[7] there is no basis here for an estoppel.

Estoppel requires: "(1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended [its] conduct

---

[7]*City of Long Beach* concluded ". . . the proper rule governing equitable estoppel against the government is the following: 'The government may be bound by an equitable estoppel in the same manner as a private party when the elements requisite to such an estoppel against a private party are present and, in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any

would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. Where one of the elements is missing, there can be no estoppel. [Citations.]" (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1061 [48 Cal.Rptr.2d 882].)

Here, the May 1993 memorandum did not provide counsel would be compensated at the $45 hourly rate for the duration of the subject cases. To the contrary, it was implicit in the memorandum that fee arrangements for court-appointed counsel were subject to change. Therefore, petitioners reasonably could not rely on the May 1993 memorandum as ensuring they would be compensated at the $45 per hour rate for the duration of the appointments they accepted at that time.

Accordingly, petitioners cannot show any detrimental reliance on the May 1993 memorandum.

Further, the June 1996 memorandum provides that in the pre-1996 cases, any services completed prior to July 1, 1996, are to be compensated at the previous rate of $45 per hour. The flat fee payment policy applies only prospectively to services rendered after the effective date of the new policy. The revised policy enables petitioners to be relieved as counsel.

Therefore, we reject petitioners' claim the superior court is estopped to modify the offered compensation for pre-1996 cases from $45 per hour to a flat fee.

3. *Remaining issues not reached.*

Because petitioners concede "the concept of a 'flat fee' system *is not* in issue in the instant proceeding," only whether the flat fee system may be extended to petitioners' pre-1996 cases, it is unnecessary to address various contentions by petitioners regarding the propriety of the flat fee compensation system.

In view of the posture of this matter, we also do not address petitioners' assertion that if an attorney seeks to be relieved in a given dependency case, the superior court will remove the attorney from the panel eligible to receive such appointments.

effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell, supra,* 3 Cal.3d at pp. 496-497.)

## Disposition

The alternative writ having served its purpose is discharged. The petition for writ of mandate is denied.

Each party to bear respective costs.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 21, 1996, and petitioners' application for review by the Supreme Court was denied January 22, 1997.