[No. B078907. Second Dist., Div. One. Feb. 9, 1994.]

GLORIA CONNOR TRASK, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
COUNTY OF LOS ANGELES, Real Party in Interest.

*Pursuant to California Constitution, article VI, section 21.

348

**COUNSEL**

Gloria Connor Trask, in pro. per., for Petitioner.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent and for Real Party in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—For no apparent reason, the juvenile court refused to pay an attorney the amounts billed for her representation of four indigent minors. By way of a petition for a writ of mandate, the attorney sought our assistance and we issued an alternative writ. After consideration of opposition submitted by County Counsel on behalf of the juvenile court and the County of Los Angeles, we hold that the juvenile court must, upon a request submitted after the court has refused to pay a portion of an appointed attorney's claim for fees and expenses, state the reason for the reduction.

FACTS

Gloria Connor Trask was appointed by the juvenile court to represent four indigent minors. According to its fee schedule, the juvenile court currently pays its appointed attorneys at the rate of $45 per hour.[1]

---

[1]During some of the times involved in these four cases, the court was paying appointed attorneys at the rate of $40/hour for out-of-court time and $50/hour for in-court time. On July

## Jason L.

Jason was charged with possession of an aerosol paint container and malicious mischief. Trask appeared at his arraignment and requested a referral for informal probation. At a second hearing, an issue arose about the amount of damage Jason had caused with his spray painting and the court authorized Trask to contact the Glendora Police Department and the Glendora Public Works Department to investigate, which she did. At a third hearing held after Trask's investigation, Jason admitted the malicious mischief charge and was placed on formal probation.[2] Trask submitted a claim for $460 for 10 hours. Without explanation, the court authorized only $112.50 (or $11.25 per hour), less than one-third the amount the minor's parents were ordered to pay to the County as reimbursement for Trask's services.

## Francisco B.

Francisco was charged with stealing a car, using a controlled substance, driving under the influence of alcohol or drugs and driving without a license. Trask appeared at his arraingment, at a hearing scheduled to consider a pre-plea report and at a third hearing where Francisco admitted two of the charges and was placed on a "camp stayed order," with a progress report date set for about two months later. At a fourth hearing, the stay order was lifted and Francisco was sent home on probation. Trask submitted a claim for $235 for 5.5 hours. Without explanation, the court authorized only $150 (or $27 per hour).

## Noe P.

Noe was charged with burglary and vandalism. Trask appeared at his arraingment and requested a referral for informal probation, which was granted at a later hearing. At a regularly scheduled progress hearing, the court found the minor had successfully completed his probationary period and the petition was dismissed. Trask submitted a claim for $285 for 5.5 hours. Without explanation, the court authorized only $90 (or $16.36 per hour).

## Tarane B.

Tarane was charged with felony aggravated assault (and was facing a possible CYA commitment) in a case where the victim was kept on life

---

1, 1993, the court switched to a flat $45 per hour. Trask's fee claims were based on whatever rate was in effect at the time she performed her services.

[2] At that hearing, the juvenile court ordered Jason's parents to reimburse the County for eight hours of attorney time (based on Trask's estimate, at that hearing, of the time she had spent on this matter). At $45 per hour, eight hours would cost the County $360.

support systems for two weeks. Trask appeared at Tarane's arraignment and for a pre-plea report, a pretrial hearing, and for the adjudication hearing which was ultimately continued because the prosecutor's medical expert was unavailable. The matter was finally resolved when the prosecutor concluded Tarane's assault was not the cause of the victim's critical medical condition and the charge was reduced to misdemeanor assault. Tarane was placed on a camp stayed order. Trask submitted at bill for $925 for 20 hours (which included six court appearances and preparation for trial of a serious felony involving complex medical issues). Without explanation, the court authorized only $350 (or $17.50 per hour).

On average, therefore, Trask was paid $17.13 per hour ($701.50 for 41 hours). After the bench officer who cut Trask's fees refused to respond to her requests for an explanation and refused to meet with her, she filed this petition on her own behalf. (*Arnelle* v. *City and County of San Francisco* (1983) 141 Cal.App.3d 693, 696-698 [190 Cal.Rptr. 490].)[3]

## DISCUSSION

Trask contends the juvenile court abused its discretion in arbitrarily cutting her fees. We agree.

When an attorney is appointed to represent an indigent adult or minor charged with a crime, the attorney is entitled to a "reasonable sum for compensation and for necessary expenses, the amount of which shall be determined by the court, to be paid out of the general fund of the county." (Pen. Code, § 987.2, subd. (a).)[4] To determine what is reasonable, the court is supposed to consider the customary fee in the community for similar services rendered by privately retained counsel to nonindigent clients, the time and labor the attorney was required to spend, the difficulty of the defense, the novelty or uncertainty of the law upon which the case turned, the degree of professional ability, skill and experience called for and exercised by the attorney, and the attorney's professional character, qualification

---

[3]In the court's unverified answer to Trask's verified petition, County Counsel correctly notes that a public agency, unlike a private citizen, need not verify its answer to a verified petition (Code Civ. Proc., §§ 446, 1109) but may instead rebut the petitioner's allegations by proof presented by way of declaration or at a hearing. (*Elliott* v. *Contractors' State License Bd.* (1990) 224 Cal.App.3d 1048, 1054 [274 Cal.Rptr. 286].) Having made this point, County Counsel has failed to offer any proof at all and Trask's factual averments therefore stand admitted. (Code Civ. Proc., § 1091; *Hunt* v. *Mayor & Council of Riverside* (1948) 31 Cal.2d 619, 623 [191 P.2d 426].) Of course, we will not consider unsworn and unsupported statements about conversations the Assistant County Counsel may have had with the bench officer (a court commissioner) who ruled on Trask's four claims. Were we to consider those statements, all they would show is a generalized, nonspecific belief on the part of the bench officer that fewer hours should have been spent in defense of the four minors.

[4]Unless otherwise stated, all section references are to the Penal Code.

and standing in the community. (§ 987.3; *In re J.G.L.* (1974) 43 Cal.App.3d 447, 452 [117 Cal.Rptr. 799].)

To comply with its mandate to appoint counsel for indigent minors involved in delinquency proceedings (Welf. & Inst. Code, §§ 218, 700), the Juvenile Division of the Los Angeles Superior Court maintains a panel of attorneys available for appointment. Although the juvenile court's policy statement explains that payment requests and supporting declarations will be monitored to prevent improper charges, the same policy statement represents that, for time properly spent, the attorneys will be paid at the rate of $45 per hour for "both preparation and court time." ■ Trask does not attack the juvenile court's adoption of an hourly rate *substantially* below the customary rate charged by retained counsel (§ 987.3, subd. (a)), thereby recognizing, as do we, that an indigent minor's right to adequate representation (*Polakovic* v. *Superior Court* (1972) 28 Cal.App.3d 69, 73 [104 Cal.Rptr. 383]) must be tempered with a "judicious respect for the taxpaying public." (*State* v. *Mempa* (1970) 78 Wn.2d 530 [477 P.2d 178, 182].) ■ Trask does contend, however, that the court cannot arbitrarily cut an appointed attorney's fees and refuse, when asked, to explain the cut. She is right.

Our consideration of the remaining factors listed in section 987.3 offers no clue about why Trask's claims were not paid in full. The time and labor required for each case (§ 987.3, subd. (b)) cannot seriously be questioned and there is no suggestion of padding or any other impropriety. In Jason's case, Trask met her client, reviewed the charges, made three court appearances, and (with the court's specific authorization before the fact), conducted an investigation to determine the amount of damage her client had done so the amount of restitution could be fixed, all in ten hours. In Francisco's case, Trask met her client, reviewed the charges and made four court appearances, all in 5.5 hours. In Noe's case, Trask met her client, reviewed the charges and made three court appearances, again in 5.5 hours. In Tarane's case, the most complex of the four, Trask made six court appearances and reviewed complex medical evidence, for which she billed 20 hours. Whether viewed separately or together, the hours are reasonable.

The case in which the most time was spent involved the most difficult defense (proving Tarane's assault upon his victim was not the cause of life-threatening medical problems). (§ 987.3, subd. (c).) The degree of professional ability, skill and experience called for and exercised (§ 987.3, subd. (e)) has never been questioned and there is no issue about Trask's character or standing in the community (§ 987.3, subd. (f)). Trask has been practicing law for about 18 years and is admitted to practice in two states, California and Hawaii. She has accepted juvenile court appointments during the entire

period of her practice (she has been in California for more than 15 years) and has served as a juvenile court referee in Los Angeles and Riverside Counties. And the quality of Trask's work in our court confirms her competence and efficiency—the petition is complete in every respect, yet concise and to the point; it is well written, thoughtfully argued and supported by appropriate authorities, verification and exhibits.[5]

■ Appointed counsel are compensated for their services because the Legislature decreed that an indigent accused of a crime has a right to representation by an attorney who is being paid for her efforts, not because services provided without charge are necessarily inadequate but on the theory that "even higher standards" are obtained when counsel is compensated. (*Halpin* v. *Superior Court* (1966) 240 Cal.App.2d 701, 704 [49 Cal.Rptr. 857].) Where, as here, an attorney fully performs her duties as appointed counsel, her compensation must be reasonable (§ 987.3) and a county's fiscal problems cannot justify interference with that right (*In re Tanya H.* (1993) 17 Cal.App.4th 825, 831-832 [21 Cal.Rptr.2d 503]).

To conclude otherwise would be to demean the importance of the juvenile court. As reflected in the Standards of Judicial Administration Recommended by the Judicial Council, the juvenile court is an integral part of California's justice system, with an obligation to raise the status of attorneys who appear before it by establishing minimum standards of practice to which all court-appointed attorneys will be expected to conform and ensuring that "attorneys appointed in the juvenile court are compensated in a manner equivalent to attorneys appointed by the court in other types of cases." (Cal. Standards of Jud. Admin., § 24(c)(4) [West's Cal. Ann. Codes, Rules (Supp. 1993 ed.) pp. 386-387].)

As noted in the Advisory Committee Comment to subdivision (c) of section 24 of the Standards of Judicial Administration, fees paid to attorneys appearing in juvenile court are sometimes below the fees paid to attorneys doing other legal work, which demeans the work of the juvenile court and leads to a belief that such work is unimportant. The representation of a child subject to incarceration in a detention facility "is at least as important as any other work in the legal system. Compensation for the legal work in the juvenile court should reflect the importance of this work."

■ At the risk of understatement, we think it is safe to suggest that the manner in which Trask's fee claims were handled is not likely to encourage

---

[5]We also think it important to note that the results obtained in each case appear to be beneficial for Trask's minor clients, a factor outside the scope of section 987.3 but relevant, we believe, in the context of this writ proceeding.

her (or anyone who knows what happened to her) to remain available for appointments in juvenile delinquency cases. As Trask put it, these fee awards will attract only the most marginal counsel, making the juvenile court a magnet for attorneys unable to find any other type of employment.

■ To prevent that result and to push the juvenile court in the direction mandated by the Standards of Judicial Administration, we hold that the juvenile court must, upon a request submitted after the court has refused to pay a portion of an appointed attorney's claim for fees and expenses, state the reason for the reduction. In most instances, a few words will probably suffice ("error in addition," "minute order shows no hearing on date claimed," "no justification for this, that or the other thing," and so on), but we leave it to the juvenile court to establish a reasonable procedure of its own, so long as it is sufficient to demonstrate an exercise of judicial discretion and not just another knot in the county's tightening purse strings.

■ As far as this case is concerned, we hold there was either a complete failure to exercise discretion or, if it was exercised, a severe abuse of that discretion. Trask is therefore entitled to her fees in pursuing the relief she obtained in this court (*Polakovic* v. *Superior Court, supra*, 28 Cal.App.3d 69; *Luke* v. *County of Los Angeles* (1969) 269 Cal.App.2d 495, 497-499 [74 Cal.Rptr. 771]) which, in the exercise of our discretion, we fix at $500, and to payment of the full balances due on her claims in the four cases which are the subject of this petition.

## DISPOSITION

Let a writ of mandate issue commanding the Juvenile Division of the Superior Court to (1) pay to Trask the balances due on each of the four claims for payment which are the subject of the within petition, (2) pay to Trask the sum of $500 as compensation for her collection efforts by way of the within petition, and (3) adopt a procedure for implementation of a rule consistent with the holding in this case.

Spencer, P. J., and Masterson, J., concurred.